COOLEY GODWARD KRONISH LLP
CHARLES M. SCHAIBLE (Bar No. 173107)
101 California Street, Fifth Floor
San Francisco, California 94111-5800
Telephone: 415.693.2000
Facsimile: 415.693.2222
cschiable@cooley.com

COOLEY GODWARD KRONISH LLP
DOUGLAS P. LOBEL (*pro hac vice* admission pending)
DAVID A. VOGEL (*pro hac vice* admission pending)
11951 Freedom Drive
Reston, Virginia 20910
Telephone: 703.456.8000
Facsimile: 703.456.8100
dlobel@cooley.com | dvogel@cooley.com

Attorneys for Defendant
*E*TRADE Securities LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOSH MANGINI, <br><br> Plaintiff, <br><br> v. <br><br> E*TRADE SECURITIES LLC, <br> a Delaware Limited Liability Company, <br><br> Defendant. | Case No. C 07 5264 SI <br><br> **DEFENDANT'S MOTION UNDER 28 U.S.C. § 1404 TO TRANSFER VENUE TO THE U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK** <br><br> Date: December 21, 2007 <br> Time: 9:00 a.m. <br> Place: Courtroom 10 |

**<u>NOTICE</u>**

TO JOSH MANGINI AND HIS ATTORNEYS OF RECORD: PLEASE TAKE NOTICE that in Courtroom 10 of the San Francisco Division of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, on December 21, 2007, at 9:00 a.m., or as soon thereafter as the matter may be heard, Defendant E*TRADE Securities LLC ("E*TRADE"), by and through its counsel, will and hereby does move

1  to transfer venue to the United States District Court for the Southern District of New York, pursuant
2  to 28 U.S.C. § 1404(a).
3      E*TRADE's motion to transfer venue is made and based upon this Notice of Motion,
4  Motion and Memorandum of Points and Authorities, the Declarations of Douglas P. Lobel and John
5  Matos, and all papers filed with the Court herein and upon such other and further testimony and
6  matters as may be presented at the hearing.

## MOTION

    Pursuant to 28 U.S.C. § 1404(a) and based upon the declarations submitted herewith and the points and authorities set forth below, E*TRADE moves for an order transferring this case to the United States District Court for the Southern District of New York.

## MEMORANDUM OF POINTS AND AUTHORITIES

### STATEMENT OF THE ISSUE

    This lawsuit – a putative class action raising a breach of contract claim over an online account service fee – has no nexus to this forum. Pursuant to 28 U.S.C. § 1404(a), the Court should transfer the case to a more convenient forum. Neither Defendant E*TRADE nor Plaintiff Josh Mangini ("Mangini") has adequate ties to this District. Although he is a resident of southern California, Mangini filed his case in northern California based on the mistaken assumption that E*TRADE's headquarters are located in Menlo Park. In fact, E*TRADE is headquartered in *New York City*. The key witnesses in the case are all in New York City, and Mangini's sole claim in the lawsuit is for breach of contract arising under New York law. Of the eight factors that courts consider when determining the most convenient forum, every factor that carries meaningful weight here points to New York as the appropriate forum. Therefore, the Court should transfer the case for the convenience of the parties to the most appropriate forum, which is the U.S. District Court for the Southern District of New York ("S.D.N.Y.").[1]

---

[1] This motion does not fall under Rule 12, *Ellis v. Costco Wholesale Corp.*, 372 F. Supp. 2d 530, 536 (N.D. Cal. 2005) (distinguishing § 1404 transfer motion from "improper venue" motion under Rule 12(b)(3)), and E*TRADE does not waive its right to file a Rule 12 motion, *Jacobson v. Hughes Aircraft Co.*, 105 F.3d 1288, 1291-92 (9th Cir. 1997) (noting that defendant filed transfer motion first then later filed Rule 12 motion, both of which were granted), *rev'd on other grounds*,

(Footnote Cont'd on Following Page)

**STATEMENT OF RELEVANT FACTS**

**I.    ALLEGATIONS IN THE COMPLAINT**

According to the Complaint, Mangini alleges that he was a customer of E*TRADE's online brokerage securities services. Complaint ¶ 4. Mangini opened an online trading account in March 2006. *Id.* ¶ 21. E*TRADE's standard customer agreement provides that an account is subject to a quarterly "account maintenance fee" ("AMF") of $40 under certain circumstances, primarily if the account is inactive. *Id.* ¶ 23. The contract states that the fee is assessed if the customer has not executed at least two trades within six months, has a low balance (under $5,000), and has been open for at least 12 months as of the date the fee is assessed. *Id.* ¶¶ 14-16 & Exhibit B to the Complaint.

Mangini admits that he was subject to the fee because, *inter alia*, he had been a customer for at least 12 months on the date the fee was assessed. *Id.* ¶ 23. However, in an effort to avoid the $40 fee, Mangini mangles the words of E*TRADE's contract. Mangini claims that he was not eligible to be assessed the fee because he had not been a customer for a full year during the entire quarter in which the fee was assessed. *Id.* ¶ 12.

On these facts, Mangini asserts a single cause of action – that E*TRADE breached his contract by assessing the fee when it was not authorized. *Id.* ¶ 35. Mangini recognizes that his contract with E*TRADE is governed by New York law. *Id.* ¶ 20.

Mangini seeks certification of a class of customers who were assessed the fee under similar circumstances. *Id.* ¶ 24.

**II.    FACTS RELEVANT TO VENUE**

Neither Mangini nor E*TRADE has any relevant connection to this District. Mangini alleges that he is a resident of San Diego County, California. Complaint ¶ 4. Mangini erroneously alleges that E*TRADE has its principle place of business in Menlo Park, California. Complaint ¶ 5. Based on that error, Mangini filed his lawsuit in San Mateo County. Complaint at p. 1.

---

(Footnote Cont'd From Previous Page)

525 U.S. 432 (1999). By stipulation filed with the Court on October 19, 2007, the deadline for E*TRADE's response to the Complaint has been extended.

1    In fact, E*TRADE's principle place of business is in New York, New York. This fact is confirmed by publicly available documents of the Financial Industry Regulatory Authority ("FINRA"), formerly known as the National Association of Securities Dealers ("NASD"). FINRA provides a public description, called a "BrokerCheck Report," for each entity registered with FINRA. The BrokerCheck Report for E*TRADE shows that E*TRADE's "main office" is in New York City, and that FINRA's New York office has primary responsibility for regulating E*TRADE. *See* Declaration of Douglas P. Lobel in Support of Defendant's Motion to Transfer ("Lobel Decl."), ¶ 5 & Exhibit 1; *see also* Declaration of John Matos in Support of Defendant's Motion to Transfer ("Matos Decl."), ¶ 2.

All of the E*TRADE employees with responsibilities related to this lawsuit, and who potentially would testify at trial, are located in New York, NY. For over four years, the AMF has been managed by two product managers in the New York office, and their decisions are supervised and approved by E*TRADE executives also in New York. Matos Decl. ¶ 6.

No E*TRADE personnel or resources in California – or anywhere in the Western half of the United States – are involved in the decision-making about AMF. *Id.* ¶ 7. Once E*TRADE's New York employees determine how the AMF will be assessed each quarter, they work with other E*TRADE personnel to apply the AMF criteria to the customer databases to identify the specific customers who are assessed the AMF. *Id.* ¶ 8. Most of this data processing is done in E*TRADE's facilities in Alpharetta, Georgia. *Id.* ¶ 10. A small subset of customers is identified by two employees in California for customers of E*TRADE's stock plan administration services. *Id.* ¶ 11. The New York team then reviews and supervises all of the data processing results to ensure that the results are accurate and consistent with the policies. *Id.* ¶ 10.

Finally, the class that Mangini seeks would have members nationwide. E*TRADE has brokerage customers throughout the country. *Id.* ¶ 13. Mangini defines the class as customers in similar factual situations as he whom E*TRADE assessed the AMF. Complaint ¶ 24. This class is not unique to California residents, but would include class members in every state. Matos Decl. ¶ 15.

# ARGUMENT

28 U.S.C. § 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Here, while this District has no connection to this litigation, all of the key witnesses are located in New York, and the case arises under New York law. As a result, it is difficult to imagine a case more deserving of transfer than this one. *Cf. Evancho v. Sanofi-Aventis U.S. Inc.*, No. C 07-98 SI, 2007 WL 1302985 (N.D. Cal. May 3, 2007) (granting motion to transfer putative class-action to New Jersey).

As this Court explained in *Evancho*, transfer is appropriate if (1) this court has proper venue to consider the motion; (2) the requested transferee court (here, the S.D.N.Y.) is one where the lawsuit might have been brought; and (3) transfer will serve the convenience of the parties and witnesses and promote the interests of justice. *Evancho*, slip. op. at *1, citing *Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F. Supp. 503, 506 (C.D. Cal. 1992).

## I. VENUE IS PROPER IN BOTH THIS COURT AND THE SOUTHERN DISTRICT OF NEW YORK

E*TRADE does not dispute that venue is proper in this Court. 28 U.S.C. §§ 1391(b) & 1391(c) (venue proper for diversity action because defendant does business within the district). However, venue is also proper in the S.D.N.Y. The S.D.N.Y. is a district where this lawsuit "might have been brought," meaning that it has subject-matter jurisdiction over the claims, personal jurisdiction over the defendants, and is an appropriate venue. *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960). Every federal court has subject-matter jurisdiction of this action under diversity of citizenship, pursuant to the Class Action Fairness Act, 28 U.S.C.A. § 1332(d) (West. Supp. 2005); *see* E*TRADE's Notice of Removal ¶¶ 11-12 (filed October 16, 2007). The S.D.N.Y. also has personal jurisdiction over E*TRADE. Finally, venue would have been proper in the S.D.N.Y. because E*TRADE's headquarters are located there and does business there, and thus "resides" there for the purpose of determining venue based solely on diversity jurisdiction. 28 U.S.C. §§ 1391(b) & (c).

|  |  |
|---|---|
| 1 | It is proper for this Court to consider this venue transfer motion even if Mangini moves to |
| 2 | remand the case to state court. Federal courts can transfer a case even where a remand motion is |
| 3 | pending because the transferee court (here, the S.D.N.Y.) is equally competent to decide the remand |
| 4 | motion. *Gould v. National Life Ins. Co.*, 990 F. Supp. 1354, 1362-63 (M.D. Ala. 1998) ("there is no |
| 5 | federal law or statute, or judicial decision, that requires this court to decide a motion to remand |
| 6 | before it decides a motion to transfer . . . . [C]ases [exist] where the transfer was decided first . . . . |
| 7 | Other districts have also decided to transfer a case before deciding a motion to remand in non- |
| 8 | [Multidistrict Litigation] situations."), citing *Allison v. Allstate Ins. Co.*, No. 96-2757, 1997 WL |
| 9 | 31175 (W.D. La. Jan. 22, 1997) (noting that transferred case included pending motion to remand); |
| 10 | *Barnes v. Resolution Trust Corp.*, No. 91-2900-LFO, 1992 WL 19113 (D.C. Cir. Jan 17, 1992). |

## II. ALL RELEVANT CONSIDERATIONS POINT TO THE SOUTHERN DISTRICT OF NEW YORK AS BEING THE MOST CONVENIENT FORUM

Courts evaluating transfer motions under § 1404(a) typically consider the following factors: "(1) the plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum." *Evancho*, slip op. at *1, citing *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001); *accord Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). The weight of these factors **strongly** point to the S.D.N.Y. here.

### A. Mangini's Choice Of Northern California Is Given "Minimal" Weight

As the Court explained in *Evancho*, the plaintiff's choice of forum is given less weight in a putative nationwide class-action lawsuit. *Evancho*, slip op. at *2. But because "the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter," Mangini's choice of this forum "is entitled to only **minimal** consideration." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (emphasis added); *see also Fabus Corp. v. Asiana Express Corp.*, No. 00-3172 PJH, 2001 WL 253185, at *1 (N.D. Cal. Mar. 5, 2001) ("The degree to which courts

<600>

defer to the plaintiff's chosen venue is substantially reduced . . . where the forum chosen lacks a significant connection to the activities alleged in the complaint.").

### B. The Convenience Of The Parties, The Witnesses, And The Ease Of Access To Evidence Favor New York

#### 1. *The Convenience Of The Witnesses Strongly Favors New York*

New York is certainly the most convenient forum for the witnesses who might testify at trial. Because this is a putative class action, Mangini necessarily believes that the predominate factual issues are E*TRADE's conduct and the language of its standard customer agreements. Complaint ¶ 27. Thus, from Mangini's perspective, the testimony of E*TRADE's witnesses are the key, if not sole, relevant testimony for the case.

Only E*TRADE witnesses from New York are likely to testify. Mangini's lawsuit challenges the language of E*TRADE's customer agreement and the criteria by which E*TRADE selected the customers to whom it assessed the AMF. The E*TRADE witnesses who can testify to those issues are the individuals involved in decision making about the AMF, including the reasons for it, the decisions as to when to assess it, the criteria for which customer accounts are eligible, and the contract language and notices to consumers about the AMF. ***All*** of E*TRADE's employees and executives with responsibilities for these issues work in New York. Matos Decl. ¶ 4. Indeed, the "logical origin of the dispute" is E*TRADE's New York headquarters where the AMF was instituted. *Evancho*, slip op. at *4, citing *Waldmer v. SER Solutions, Inc.*, No. 05-209-JAR, 2006 U.S. Dist. LEXIS 4934 (D. Kan. Feb. 3, 2006) (defendant's headquarters in class-action lawsuit was origin of claim, where challenged policy was formulated); *see also Teknekron Software Sys., Inc. v. Cornell Univ.*, No. 93-20122SW, 1993 WL 215024, at *7 (N.D. Cal. June 14, 1993) ("center of gravity" of case was New York, not California).

There are E*TRADE witnesses outside of New York, but they would not be expected to testify. Once the AMF policies are established in New York, other employees apply the AMF rules to customer databases to identify the specific customer accounts that are assessed the AMF each quarter. Matos Decl. ¶¶ 8 & 10. Most of these employees are located in Georgia; two are located in California, but only for a small subset of customers of stock plan administration products, *id.* ¶ 11 –

and Mangini does not allege he is a customer of those products. Only the New York employees set the policies and ensure the accuracy of the quarterly assessments, so there would be no reason any of the Georgia or California witnesses would testify at trial in this lawsuit.

While the class members' location[s] is potentially relevant, that does not tip the balance in any forum's favor. E*TRADE will argue that class certification is not appropriate because each customer and putative class member will have his or her own motivations and personal knowledge that impacts an alleged breach of contract claim based on the timing of the AMF. Here, class members probably will number in the hundreds of thousands distributed throughout the country. Any sampling of information from class members is no more relevant to California than it is to New York or to any other state.

### 2. *New York Is, On Balance, The Most Convenient Forum To The Parties*

No single forum is perfectly convenient to the parties. Mangini lives in San Diego County (Complaint ¶ 4); his lawyer is located in Los Angeles (Complaint at p. 1); E*TRADE's headquarters and its relevant personnel are in New York (Matos Decl. ¶¶ 2 & 4); and E*TRADE's nationwide counsel who will be the lead on the merits of the case are based in Northern Virginia (Lobel Decl. ¶ 2).

However, on balance, the most convenient forum to all of the parties is New York. Mangini undoubtedly will complain that New York is distant and inconvenient. However, Mangini or at least his counsel will need to make multiple trips to New York to take depositions in this case regardless of the forum in which the case is pending. Lobel Decl. ¶ 6; Matos Decl. ¶ 4. The mere fact Mangini has sued E*TRADE concerning its AMF necessarily means Mangini will be required to undertake cross-country travel. Having the case heard in New York would not require significant additional travel by Mangini. Discovery motions are often heard on the papers or by telephonic conference in the S.D.N.Y. Lobel Decl. ¶ 7. Moving the case to New York thus would require only a small number of potential court appearances, even if the case proceeds all the way through trial. Finally, that an individual plaintiff suing a large corporation resides in a different state is not controlling, otherwise large class-action lawsuits would never be subject to transfer even if all of the other factors fell in favor of transfer. *E.g.*, *David v. Alphin*, No. C 06-4763 WHA, 2007 WL 39400,

at *3 (N.D. Cal. Jan. 4, 2007) (even though individual plaintiff resided in California and intended to attend trial and hearing, case was transferred to North Carolina, defendants' headquarters because majority of defendants' witnesses were located there).

### 3. *The Ease Of Access To Evidence Is Generally Forum-Neutral*

Most of the evidence for this class-action lawsuit is in New York. However, E*TRADE will produce evidence electronically so this is not a significant factor. E*TRADE also does not anticipate third-party discovery will be necessary.

Consequently, New York is the most convenient forum to the parties, witnesses and evidence.

## C. New York Is Most Familiar With The Applicable Law

A New York court's familiarity with New York law strongly favors transfer to New York. The parties agree that New York law solely governs the breach of contract claim Mangini raises, and this is true for every class member as well. Complaint ¶ 20 (no subclasses needed for different states). New York courts are presumably more familiar with New York law than any other court, including California courts.

## D. Considerations Of Judicial Resources Favor Transfer To New York

The factors of relative court congestion and time of trial weigh in favor of New York. *Evancho*, slip op. at *4.

According to the latest statistics from the Administrative Office of the U.S. Courts, the median time interval for resolving all cases is about equal for the S.D.N.Y. (8.9 months) and this District (9.2 months). *See* Lobel Decl. ¶ 8 & Exhibit 2. However, as cases head toward trial, the S.D.N.Y. is actually a faster forum. The statistics show that the median time for cases resolved without court action have a median time of 8.6 months (S.D.N.Y.) to 6.9 months (N.D. Cal.); cases resolved before pretrial take 8.9 months (S.D.N.Y.) to 7.8 months (N.D. Cal.); resolved during or after pretrial are 12.4 months (S.D.N.Y.) to 12.7 months (N.D. Cal.), and through trial a median time of 23.0 months (S.D.N.Y.) to 27.5 months (N.D. Cal.). *Id.*

Furthermore, the docket of the S.D.N.Y. is much less congested than this District's docket. The statistics show that the S.D.N.Y. had a total number of 8,631 cases, and this District had 4,487

cases. *Id.* But the S.D.N.Y. has 44 district judges, whereas this District has 18 district judges. Lobel Decl. ¶ 9 & Exhibits 3 & 4. Thus, the dockets have 196 cases per judge in S.D.N.Y. versus 249 cases per judge in this District – so this District appears to be 25 percent more congested than the S.D.N.Y.

### E. The Remaining Factors Are Neutral

The factor of "local interest in the controversy" does not weigh in favor of this District. Northern California has no particular interest in the case, except to the extent some putative class members might reside here; but that assumes a class is certified, which E*TRADE will strongly oppose. The other factor, feasibility of consolidation, is neutral because no other claims exist that will be consolidated. Lobel Decl. ¶ 3.

All of the factors that carry meaningful weight favor New York:

- ***Two*** factors are ***strongly*** in favor of New York (Nos. 3 and 5);
- ***Two more*** factors favor New York (Nos. 2 and 8);
- Three factors are neutral (Nos. 4, 6 and 7); and
- Only one factor favors this District but "minimally" (No. 1).

By comparison, in *Evancho*, this Court transferred a case where ***fewer*** of the factors weighed in favor of the transferee forum, New Jersey; there, two factors actually weighed in favor of this Court. *Evancho*, slip op. at *4-*5 ("totality" of factors pointed to New Jersey).

## CONCLUSION

For these reasons, E*TRADE respectfully requests that the Court grant this motion and transfer this case pursuant to 28 U.S.C. § 1404 to the U.S. District Court for the Southern District of New York.

Dated: November 2, 2007　　　　　　　　　　　COOLEY GODWARD KRONISH LLP

By: /s/ Charles M. Schaible
　　　Charles M. Schaible (Bar No. 173107)

Attorneys for Defendants
*E*TRADE Securities LLC*

Of Counsel:

Douglas P. Lobel
David A. Vogel
COOLEY GODWARD KRONISH LLP
11951 Freedom Drive, 16th Floor
Reston, Virginia 20190
Telephone:  703.456.8000
Facsimile:  703.456.8100

342358♦RE

MOTION FOR TRANSFER TO S.D.N.Y.