RICHARD L. KELLNER, SBN 171416
(rlk@kbklawyers.com)
KABATECK BROWN KELLNER LLP
644 South Figueroa Street
Los Angeles, California 90017
Telephone: (213) 217-5000
Facsimile: (213) 217-5010

Attorneys for Plaintiff JOSH MANGINI,
on Behalf of Himself and All Others
Similarly Situated

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JOSH MANGINI, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>E*TRADE SECURITIES L.L.C., a Delaware Limited Liability Company; and Does 1 through 250, inclusive,<br><br>Defendants. | CASE NO. C 07 5264 SI<br><br>**DECLARATION OF RICHARD L. KELLNER IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS MOTION TO TRANSFER VENUE**<br><br>Action Filed: September 13, 2007<br>Hearing Date: January 25, 2008<br>Department 8<br>Judge: Hon. Susan Ilston |

## DECLARATION OF RICHARD L. KELLNER

I, Richard L. Kellner, declare as follows:

1.     I am a partner with Kabateck Brown Kellner LLP, one of the counsel for Plaintiffs and the proposed classes. I am licensed to practice before all of the Courts of the State of California and am admitted to practice before the United States District Court for the Northern District of California. I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would testify as such.

---

DECLARATION OF RICHARD L. KELLNER ISO OPPOSITON TO DEFENDANT'S MOTION TO TRANSFER VENUE

1    2.    Attached hereto as Exhibit "A" is a true and correct copy of E*Trade Securities

2    Brokerage Customer Agreement as it appeared when this action was originally filed.

3    3.    Attached hereto as Exhibit "B" is a true and correct copy excerpts of the NASD

4    Code of Arbitration Procedure for Customer Disputes.  Exhibit "B" contains Part II of the NASD

5    Code of Arbitration Procedure for Customer Disputes entitled "General Arbitration Rules". This

6    document is located at the following URL:

7    http://www.finra.org/web/groups/rules_regs/documents/rule_filing/p018365.pdf.

8    The document can be accessed at www.finra.org by clicking on the "Arbitration & Mediation"

9    tab located at the top of the screen.  On the following page, click the "Code of Arbitration

10    Procedure" link located on the left side of the page and then clicking the "Customer Code" link

11    on the following page.

12    4.    Attached hereto as Exhibit "C" is a true and correct copy of a *Standard & Poor's*

13    *Register of Directors and Executives* listing for Louis Klobuchar Jr.

14    5.    Attached hereto as Exhibit "D" is a true and correct copy of excerpts of E*Trade

15    Financial Corporation's 10-K annual filing for the year ended December 31, 2006.  Exhibit "D"

16    contains E*Trade Financial Corporation's Income Statement.

17

18    I declare under penalty of perjury according to the laws of the United States of America

19    and the State of California that the foregoing is true and correct.

20    Executed on this 4th day of January, 2008, at Los Angeles, California.

21

22

23    _____
     RICHARD L. KELLNER

24

25

26

27

28

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000
FAX (213) 217-5010

— 2 —

**DECLARATION OF RICHARD L. KELLNER ISO OPPOSITON TO DEFENDANT'S MOTION TO TRANSFER VENUE**

# EXHIBIT A



**E*TRADE FINANCIAL**

# Help Center
**Questions? Call 1-800-ETRADE-1**
(1-800-387-2331)

**How Do I...?**                                                                                   🖨 Print

**E*TRADE Securities Brokerage Customer Agreement**                                                🖨 Print

1. Introduction
2. Definitions
3. Clearing Broker Agreement
4. Account Provisions
5. E*TRADE Securities Brokerage Services
6. Trading Provisions
7. Trading System
8. Arbitration Agreement And Disclosures
9. Margin Accounts
10. Options Trading
11. Mutual Fund Trading
12. Other Provisions And Disclosures
13. Electronic Delivery Of Documents
14. User Agreement

**This Customer Agreement contains important information about privacy as well as the risks associated with using margin and trading options. Please read this information carefully.**

In consideration for E*TRADE Securities LLC opening and maintaining one or more Accounts for me, I agree to the terms and conditions set forth in this Customer Agreement ("Agreement"), as amended from time to time.

## 1. INTRODUCTION

I promise to read this Agreement carefully and retain it for future reference. I understand that the terms and conditions of this Agreement govern all aspects of my relationship with E*TRADE Securities, including all transactions between E*TRADE Securities and me and all products and services now or in the future offered through E*TRADE Securities, beginning on the date my Account is opened. By entering into this Agreement, I acknowledge receipt of the E*TRADE Securities Privacy Statement. If I participate in other services provided by E*TRADE Securities that require me to agree to specific terms and conditions electronically (through clicks or other actions) or otherwise, such terms and conditions will be deemed an amendment and will be incorporated into and made part of this Agreement. E*TRADE Securities reserves the right to modify or terminate this Agreement anytime. I agree to consult the E*TRADE Securities Web site regularly for up-to-date information about the Service and associated fees and charges.

If I determine that I am unwilling to be bound by the terms and conditions of this Agreement, I will not submit an application for an Account with E*TRADE Securities. E*TRADE Securities reserves the right to decline any Account Application or to terminate any Account anytime and for any reason, in its sole discretion.

Various features of my account(s) with E*TRADE Securities are offered or processed through a service provider, which may be an unaffiliated company, or an affiliate of E*TRADE Securities, such as E*TRADE Bank or E*TRADE Clearing. Unless otherwise noted, all authority granted to, or limitations of liability of, E*TRADE Securities shall include its agents and representatives and any service provider, including E*TRADE Bank (for certain banking services integrated with an Account) and E*TRADE Clearing (for Account custody, clearing and settlement services). E*TRADE Securities, its agents or its affiliates acting on behalf of E*TRADE Securities under this Agreement are authorized to perform the services contemplated by this Agreement.

**IF I AM A NEW CUSTOMER, I WILL CAREFULLY READ, UNDERSTAND AND ACCEPT THE TERMS AND CONDITIONS OF THIS AGREEMENT BEFORE I CLICK "I AGREE" OR OTHER SIMILARLY WORDED BUTTON. IF I HAVE ANY QUESTIONS ABOUT ANY OF THE PROVISIONS IN THIS AGREEMENT, I WILL CALL E*TRADE SECURITIES AT 1-800-ETRADE1 (1-800-387-2331). I UNDERSTAND THAT CLICKING "I AGREE" IS THE LEGAL EQUIVALENT OF MY MANUALLY SIGNING THIS AGREEMENT AND I WILL BE LEGALLY BOUND BY ITS TERMS AND CONDITIONS. IF I AM NOT APPLYING ONLINE, I UNDERSTAND THAT BY OPENING AN E*TRADE SECURITIES BROKERAGE ACCOUNT, I AGREE TO BE LEGALLY BOUND BY THE TERMS AND CONDITIONS OF THIS AGREEMENT. I UNDERSTAND THAT THIS AGREEMENT MAY BE AMENDED FROM TIME TO TIME BY E*TRADE SECURITIES, WITH REVISED TERMS POSTED ON THE E*TRADE FINANCIAL WEB SITE. I AGREE TO CHECK FOR UPDATES TO THIS AGREEMENT. I UNDERSTAND THAT BY CONTINUING TO MAINTAIN MY SECURITIES BROKERAGE ACCOUNT WITHOUT OBJECTING TO REVISED TERMS OF THIS AGREEMENT, I AM ACCEPTING THE TERMS OF THE REVISED AGREEMENT AND I WILL BE LEGALLY BOUND BY ITS TERMS AND CONDITIONS.**

Back to top

## 2. DEFINITIONS

The terms set forth below have the following meanings as used in the Agreement:

**Access Device.** A computer, a personal digital assistant ("PDA"), television, telephone, beeper, or any other communications device, including any software I use on such device whether E*TRADE Securities provides it to me or otherwise, that enables me to access and use the Service through any means, including the World Wide Web, the Internet, any wireless connection or any other computer or telephonic network.

1000  E*TRADE FINANCIAL Help Center    https://scotrade.com/t/i/estation/contexthelp?id=120903

**Account.** Each Brokerage Account at E*TRADE Securities established in my name alone, in my name together with others or in which I have a beneficial interest.

**Account Application.** The application I prepare and submit to open an Account with E*TRADE Securities, and as part of which I consent to the terms and conditions of this Agreement, including all information provided by me to E*TRADE Securities in connection with the opening or maintenance of my Account, and any later applications submitted by me to E*TRADE Securities for additional services or account features.

**Account holder.** "Account holder" shall mean the person, corporation, partnership, trustee, custodian or other entity in whose name the Account is opened. The singular of Account holder where appropriate shall include the plural.

**Accounts of a Household.** Accounts of all persons with the same last name at the same address for purposes of sending communications. E*TRADE Securities may consider other accounts as Accounts of a Household at its discretion. If I am a Fiduciary on any Account held by E*TRADE Securities, I agree to notify E*TRADE Securities to disregard that Account for the purpose of considering such Account as Accounts of a Household.

**Authorized agent(s)/Adviser(s).** Any person or entity selected by me to provide instructions to E*TRADE Securities with respect to investment or trading activity in my account, including buying, selling or exchanging securities or other products in my account. The term Authorized agent(s)/Adviser(s) shall include any investment adviser selected by me through the E*Trade Advisor Referral Service.

**ATM.** Automated teller machine.

**Available Funds.** The sum of any Cash Balance, bank sweep deposit accounts, the value of any money market funds and any available margin, less funds needed to pay for unsettled purchases or open orders, and less uncleared credits and any Debit Balance.

**Banking Services.** Certain electronic funds transfer, ATM, debit card and related banking services accessible through the Account, and provided by a bank or other depository institution.

**Brokerage Account.** A Cash Account or a Margin Account, with or without an options trading feature.

Business Day. Monday through Friday, excluding stock exchange holidays. Although E*TRADE Securities may conduct business on bank holidays, bank holidays are not considered Business Days for purposes relating to the Banking Services.

**Cash Account.** The basic Brokerage Account E*TRADE Securities offers in which I make all purchases for cash settlement, without credit.

**Cash Balance.** An account balance representing money owed to me as a general obligation of E*TRADE Clearing, upon which E*TRADE Clearing pays me interest, subject to the terms of this Agreement. Cash Balances are not bank deposits and are not insured by the FDIC. The Cash Balance is the sum of the uninvested cash in my Account less the following: (i) funds necessary to pay for purchase transactions due to settle on or after the date the Cash Balance is to be determined; (ii) charges to my Account, including Electronic Funds Transfer and wire transfer charges; and (iii) credit balances that are designated as collateral for my obligations to cover margin loans, short sales and/or option positions.

**Customer Agreement.** This Agreement, which I agree to abide by when I open a Brokerage Account, as it may be amended from time to time.

**Data Providers.** Any exchange, organization, association or other entity that maintains or provides a marketplace or facility that performs functions commonly performed by a national securities exchange or association that otherwise disseminates information related to securities or other financial instruments, products or vehicles.

**Debit Balance.** An account balance representing money owed to E*TRADE Securities.

**Electronic Funds Transfer.** Any transfer of funds that I initiate or authorize through an electronic payment system such as the Automated Clearing House ("ACH") Network.

**E*TRADE Bank.** E*TRADE Bank, its officers, directors, employees, representatives, agents, successors and assigns. E*TRADE Bank is an affiliate of E*TRADE Securities LLC.

**E*TRADE Clearing.** E*TRADE Clearing LLC, its officers, directors, employees, representatives, agents, successors and assigns. E*TRADE Clearing LLC is an affiliate of E*TRADE Securities LLC.

**E*TRADE Securities.** E*TRADE Securities LLC, its officers, directors, employees, representatives, successors, assigns, and authorized agents, including without limitation E*Trade Clearing. E*TRADE Securities, its agents, service providers, or its affiliates acting on behalf of E*TRADE Securities under this Agreement are authorized to perform the services contemplated by this Agreement. For purposes of this Agreement, references to affiliates of E*TRADE Securities include their respective officers, directors, employees, representatives, agents, successors and assigns.

**E*TRADE Family of Funds or E*TRADE Funds.** Mutual funds advised by affiliates of E*TRADE Securities and made available to Account holders through the Service.

**Fiduciary.** A person or entity authorized to give instructions with respect to an Account on behalf of beneficial owners of the Account, including a UGMA or UTMA custodian, a trustee, conservator, guardian, representative, administrator, executor, attorney-in-fact or an investment adviser. A Fiduciary is bound by the provisions of this Agreement with respect to orders entered through the System to the same extent as the beneficial owners of the Account.

**Free-Riding.** The prohibited practice of purchasing and selling a security in a Cash Account without meeting the payment obligation under Regulation T of the Federal Reserve Board created by the initial purchase. Free-Riding generally entails using the proceeds of a sale of a security to meet the obligation to pay for the earlier purchase of the same security, and includes similar practices, such as improper options transactions in which proceeds of uncovered options writing are used to finance other stock or option positions in violation of the payment obligations in Regulation T.

**Good Delivery.** The delivery to E*TRADE Securities of freely transferable securities that are properly endorsed, registered and fully negotiable.

**"I", "Me", "My", "Us".** The individuals, corporations or other entities who are the Account holders or who own a legal or beneficial interest in an Account.

**Margin Account.** An Account that allows me to make purchases and "short" certain securities using available cash and/or using funds or securities borrowed from E*TRADE Securities, while using marginable securities or cash as collateral for the credit.

**Market Data.** Quotations, transactions and last sale information disseminated by Data Providers in accordance with federal securities regulations, and all information based on any such information.

**NASD.** The National Association of Securities Dealers, Inc., of which E*TRADE Securities is a member firm. Where the context requires, "NASD" also refers to NASD subsidiaries such as NASD Regulation, Inc. and NASD Dispute Resolution, Inc.

**NYSE.** The New York Stock Exchange, Inc., of which E*TRADE Clearing is a member firm. Options Account. An Account that allows me to trade standardized options on U.S. options exchanges. An option is a contract that entitles or obligates me to buy or sell a predetermined quantity of an underlying security or index at a fixed exercise price on or before its specified expiration date.

**Options Account.** An Account that allows me to trade standardized options on U.S. options exchanges. An option is a contract that entitles or obligates me to buy or sell a predetermined quantity of an underlying security or index at a fixed exercise price on or before its specified expiration date.

**Password.** Any authentication device (including alphanumeric codes) associated with my User ID that E*TRADE Securities requires for access to my Account (or certain Account features) through the Service.

**PIN.** Personal identification number.

**Restricted Securities.** Securities owned by an affiliate of an issuer or subject to Rule 144 or 145(d) of the Securities Act of 1933 or any other rule relating to restricted or control securities, or securities owned under restricted transferability due to an agreement with the owner and the issuer or the underwriter.

**Securities and/or Other Property.** This includes cash, stocks, bonds, mutual funds, money market funds, options and other financial instruments and related contracts, whether certificated or uncertificated and whether for present or future delivery, and all rights and entitlements thereto. This definition includes the securities and other property and the proceeds thereof currently or in the future held, carried or maintained by E*TRADE Securities or any of its affiliates, in the possession or control of E*TRADE Securities or in the possession or control of any such affiliate, for any purpose, in and for any of my current or future Accounts, including any Account in which I have a beneficial interest.

**Service.** The brokerage, financial and other services that E*TRADE Securities may offer, including through electronic means.

**Settlement Date.** The day on which a transaction is to be completed. On this day, buyers are to pay for their purchases and sellers are to deliver their securities. Generally, for equity transactions, settlement date is three (3) days after a trade executes, for options trades settlement date is the day after the trade executes, and settlement for mutual funds can vary depending on the particular fund family.

**Short Sale.** The sale of a security I do not own with the intention to settle with borrowed securities.

**Interactive Voice Response (IVR).** The E*TRADE Securities touch-tone trading system.

**User ID.** The alphanumeric code that uniquely identifies me for purposes of the Service.

Back to top

### 3. CLEARING BROKER AGREEMENT

I understand that E*TRADE Securities LLC has entered into an agreement with its affiliate, E*TRADE Clearing, pursuant to which E*TRADE Clearing will carry and maintain my Brokerage Account, and execute (if so requested) and clear and settle securities transactions therein. I authorize E*TRADE Clearing, without any inquiry or investigation by it, to accept from E*TRADE Securities LLC orders for the purchase or sale of securities or other property, on margin or otherwise, and any other instructions concerning the Brokerage Account. E*TRADE Securities LLC is authorized to make arrangements from time to time for the carrying of my account by other clearing brokers without further authorization from me.

Back to top

### 4. ACCOUNT PROVISIONS

**(a) True and Accurate Information; Ownership**
The information I have provided on my Account Application is current, accurate, truthful and complete. Unless otherwise required by this Agreement, I agree to notify E*TRADE Securities of any change to the information I provide on my Account Application promptly, but in any event within thirty (30) days of such change. I agree to indemnify and hold E*TRADE Securities and its affiliates harmless from and against any and all loss, liability, cost, judgment, arbitration award, settlement, tax, penalty, action, damage, charge, expense or fee (including attorneys' fees and costs of collection) of any nature whatsoever, and claims therefore (collectively, "Losses") arising out of or relating to my failure to provide true and accurate information on my Account Application or to update such information as required. I further represent that no one else has an interest in my Account except me and any other person that I have previously disclosed to E*TRADE Securities through the Account Application or otherwise in a manner specified by E*TRADE Securities.

**(b) Fees, Commissions and Account Minimums**
I agree promptly to pay brokerage commissions, charges and other fees as set forth in E*TRADE Securities' then-current fee schedule and as

applicable to my Account and the transactions and services I may receive. I also agree to pay all applicable federal, state and local taxes. I authorize E*TRADE Securities automatically to debit my Account for any such brokerage commissions, charges, fees and taxes. A schedule of the current fees and commissions is available on the E*TRADE Securities Web site. E*TRADE Securities may modify the fee structure anytime by posting a modified schedule on its Web site. E*TRADE Securities may require me to make a minimum payment to open an Account and to maintain a minimum balance in the Account thereafter. If my Account's value falls below the minimum balance or my Account is inactive, E*TRADE Securities may charge additional fees or, if it deems appropriate in its discretion, close my Account. Account maintenance fees are described in the schedule of fees on the E*TRADE Securities Web site.

**(c) Account Types**
E*TRADE Securities offers many different account types, including individual retirement accounts and other retirement accounts (together, "retirement accounts") custodial, estate, trust and partnership accounts. Account types may be subject to certain restrictions and eligibility requirements, and certain services are not available to all customers and account types. Further information on this subject is on the E*TRADE Securities Web site. I am responsible for selecting the account type that is appropriate for my needs and circumstances.

Unless I indicate on my Account Application that I do not desire margin privileges, E*TRADE Securities will, at its discretion (unless otherwise required by law), treat my Account Application as a request to open a Margin Account. E*TRADE Securities reserves the right to limit the number of Cash and/or Margin Accounts I maintain (or have a beneficial interest in) at any one time.

**(d) Joint Accounts**
If there is more than one Account holder, the legal ownership of the Account will be as designated on the Account Application. If no designation is made, each Account holder directs E*TRADE Securities to establish the Account as joint tenants with rights of survivorship.

If there is more than one Account holder, each Account holder agrees to be jointly and severally liable for all obligations arising under this Agreement or otherwise relating to the Account, including responsibility for orders entered through the Service or using any User ID and Password assigned to the Account, regardless of which Account holder gives such instructions, enters such orders or changes such Password. Each Account holder has full authority, acting individually and without notice to any other Account holder, to deal with E*TRADE Securities as fully and completely as if such Account holder were the sole Account holder. Each of us authorizes E*TRADE Securities to follow the instructions of any one Account holder concerning any matter pertaining to the Account. This includes purchase and sale of securities (on margin or otherwise), delivery of any or all Securities and/or Other Property in the Account to any Account holder or to any third party, or disbursement of any or all monies in the Account. E*TRADE Securities is not responsible for determining the purpose or propriety of any instruction received from any Account holder as against any other Account holder, or of any disposition of payments or deliveries of Securities and/or Other Property between or among Account holders. At its sole discretion, E*TRADE Securities reserves the right to require written instructions from one or all Account holders. If E*TRADE Securities receives instructions from any Account holder that, in E*TRADE Securities' opinion, conflict with instructions received from any other Account holder, E*TRADE Securities may comply with any of these instructions or advise each Account holder of the apparent conflict and take no action as to any of these instructions until it actually receives and has a reasonable amount of time to act on satisfactory instructions from any or all of the Account holders.

In the event of a dispute between or among Account holders of which E*TRADE Securities has notice, E*TRADE Securities reserves the right, but is not obligated, to place restrictions on an Account. For example, if an Account holder requests a restriction be placed on access to funds in the Account because of a pending litigation or dispute between Account holders, E*TRADE Securities may prohibit all transfers of funds from the Account, including canceling checkwriting privileges, with such restrictions to remain in place until E*TRADE Securities actually receives and has a reasonable amount of time to act on appropriate court documentation or a written, notarized instruction signed by all Account holders. In such a case, all Account holders remain liable for any pending checks that have not yet cleared at the time of the restriction. E*TRADE Securities also may, at the expense of the Account holders, commence or defend any action or proceeding for or in the nature of interpleader to have the dispute resolved judicially. If a suit or proceeding for or in the nature of interpleader is brought by or against it, E*TRADE Securities may deliver the Account into the registry of the court, at which time E*TRADE Securities will be deemed to be and will be released and discharged from all further obligations and responsibilities under this Agreement.

Each of us agrees that, on the death or disability of an Account holder, divorce of married Account holders, or other event that causes a change in ownership or capacity with respect to the Account, the remaining Account holder(s) will immediately give E*TRADE Securities official written notice of such change of ownership or capacity. E*TRADE Securities will not be responsible for any transfers, payments or other transactions in the Account made at the direction of a former Account holder or incapacitated Account holder before E*TRADE Securities actually received and had a reasonable amount of time to act on such official written notice. Following receipt of such official written notice, E*TRADE Securities may require additional documents and reserves the right to retain such assets in and/or restrict transactions in the Account as it deems advisable in its sole discretion to protect itself against any Losses. Any former Account holder and the estate of any deceased or incapacitated Account holder will remain jointly and severally liable for any Losses in the Account arising out of or relating to transactions initiated before E*TRADE Securities actually received and had a reasonable amount of time to act on such official written notice.

E*TRADE Securities will not notify other Account holders of the actions taken by any one Account holder. Each Account holder agrees that notice provided to any one Account holder will be deemed to be notice to all Account holders for all purposes.

**(e) Fiduciary Accounts**
E*TRADE Securities does not review any action or inaction of a Fiduciary with respect to an Account and is not responsible for determining whether a Fiduciary's action or inaction satisfies the standard of care applicable to such Fiduciary's handling of an Account. E*TRADE Securities is not responsible for determining the validity of a person or entity's status or capacity to serve as a Fiduciary. At its sole discretion, E*TRADE Securities may require additional documentation before permitting a Fiduciary on an existing Account or when opening a new Account. The Fiduciary agrees to indemnify and hold E*TRADE Securities and its affiliates harmless from and against any Losses arising out of or relating to any act, error or omission of the Fiduciary.

A custodian of an UTMA or UGMA Account is responsible for all activity in the Account. Activity resulting from any instructions received from the minor, including placing or attempting to place orders, using or attempting to use a custodian's Password to the Account or taking delivery or attempting to take delivery of assets of the Account, and all related Banking Services, will be deemed to be the actions of the custodian. As the person responsible for the Account, the custodian will be held liable for any consequences of such activity, including any Losses incurred by E*TRADE Securities. The custodian and minor agree to indemnify and hold E*TRADE Securities and its affiliates harmless from and against any Losses arising out of or relating to any act, error or omission of the custodian or minor.

**(f) Taxpayer ID and Backup Withholding**

8/29/2007 11:52

If a correct Taxpayer Identification Number is not provided to E*TRADE Securities, I understand I may be subject to backup withholding tax at the appropriate rate on all dividends, interest and gross proceeds paid to me. Backup withholding taxes are sent to the IRS and cannot be refunded by E*TRADE Securities. I further understand that if I waive tax withholding and fail to pay sufficient estimated taxes to the IRS, I may be subject to tax penalties.

**(g) Checks and Checkwriting Privileges**
Checks and checkwriting privileges are a feature linked to my Account and processed through a bank service provider retained by E*TRADE Securities. If I have checkwriting privileges, funds to pay the checks I write and any related fees will be debited from my Account. E*TRADE Securities may change the bank service provider from time-to-time. E*TRADE Securities' affiliate, E*TRADE Bank, is the bank service provider for most purposes. Certain additional terms and conditions apply to the checkwriting feature, as set forth below.

**(1) General Rules Applicable to Checks**

**Handling of Items.** E*TRADE Securities and its agents and service providers act only as my collecting agent for items credited, and assume no responsibility beyond their exercise of ordinary care. E*TRADE Securities accepts cash, checks, wires and other funds subject to the subsequent verification of the funds. All items are credited subject to final payment to E*TRADE Securities in cash or solvent credits at its offices. E*TRADE Securities may withhold all or part of the proceeds of any addition of funds to the Account until final payment is received in cash or solvent credits. No item in the addition of funds to the Account shall be deemed finally paid because a portion of the addition to the Account is deducted and withdrawn in cash.

E*TRADE Securities may forward items to service providers and correspondents. It shall not be liable for default or negligence of service providers and correspondents selected with ordinary care, nor for losses in transit. Each service provider and correspondent shall be liable for its own negligence. Items and their proceeds may be handled by any service provider or correspondent bank, Federal Reserve Bank or clearing house in accordance with any applicable rule, common usage, policy, procedure or any other lawful practice.

E*TRADE Securities shall not be liable to me for any loss caused by payment of a postdated item before its date. If I wish to impose special restrictions on the face of items with respect to payment of such items (e.g., maximum amount or date of payment), such restrictions will not be effective unless I have given prior written notice to E*TRADE Securities, and E*TRADE Securities has agreed in writing to the instructions.

E*TRADE Securities and its bank service provider are under no obligation to pay a check, other than a certified check, which is presented more than six (6) months after its date, but E*TRADE Securities may charge my Account for a payment made thereafter in good faith.

For applicable accounts, E*TRADE Securities and its bank service provider will retain images of items. The images of retained items may be available to me upon request to E*TRADE Securities at a cost to me.

**Extraneous Information.** Although they are not obligated to, E*TRADE Securities and its bank service provider may pay or accept checks and other items bearing restrictions or notations (e.g., "Void after 6 months," "Void over $50.00," "Payment in Full," and the like), whether on the front or back, in any form or format. If I cash or deposit an item or write a check with such a notation, I agree that it applies only between me and the payee or maker. The notation will have no effect on E*TRADE Securities and its bank service provider, and I agree to accept responsibility for payment of the item.

**Endorsements.** I shall not place an endorsement, writing or other mark on the back of a check being submitted for addition to my Account in the area reserved for endorsement of E*TRADE Securities and its bank service provider. Federal regulations require that the top 1-1/2 inches on the back (when read vertically from the trailing edge) of the check is designated for my endorsement as payee. If I endorse a check in the area outside of the endorsement area, mark or otherwise obscure the other area, or make an endorsement which is illegible or incomplete, I agree to hold E*TRADE Securities and its bank service provider harmless from any loss, delay, liability, claim, or damage which occurs as a result.

**Posting and Receipt of Items.** E*TRADE Securities reserves the right to post all items, including cash and items drawn on the Account, not later than midnight of its next business day after receipt at its office or its bank service provider's office during E*TRADE Securities' regular business hours, and E*TRADE Securities shall not be liable for damage caused by nonpayment of any item resulting from the exercise of this right. Any item received on a Saturday, Sunday or Federal Holiday shall be deemed received on the next business day. Funds received by E*TRADE Securities are subject to E*TRADE Securities' "Availability of Funds" policy set forth in Part 4(j) of this Agreement, which is subject to change from time to time.

**Foreign Items.** With respect to items payable in foreign currency, E*TRADE Securities and its bank service provider, may, at its discretion, refuse to accept any item payable in foreign currency. E*TRADE Securities and its bank service provider will accept a check drawn on a non-United States bank if it has a corresponding bank in the United States that is printed on the check. The item will be sent to collection through the Federal Reserve and will be converted to U.S. Dollars. A longer delay will apply to this type of item. In addition, the fee that the Federal Reserve charges E*TRADE Securities and its bank service provider will be passed directly to the customer for this service. I agree to pay for any fees that E*TRADE Securities and its bank service provider incur to convert foreign currency items that I place into my account. E*TRADE Securities, at its discretion, may impose additional fees for this service regarding foreign items. E*TRADE Securities reserves the right to change the amount of any fee imposed at any time.

**Charge-Backs.** E*TRADE Securities and its bank service provider may charge-back any item, or a photocopy or electronic image of the item, at any time before final payment, whether returned or not, and whether drawn on my Account at E*TRADE Securities, E*TRADE Bank, or another bank. E*TRADE Securities may debit my Account for any exchange charges on items. E*TRADE Securities may debit my Account into overdraft for any such purpose, and will not be liable for damages to me as a result of checks drawn on the account, which are dishonored because of the charge-back.

**Payment of Checks.** When processing checks drawn on my Account, E*TRADE Securities and its bank service provider's policy is to pay them according to the dollar amount. E*TRADE Securities and its bank service provider may process my checks and other transactions in any order they choose. Although E*TRADE Securities and its bank service provider generally pay larger checks first, they are not obligated to do so and may change the order in which they process my transactions without prior notice to me. If I want to avoid insufficient fund ("NSF") charges and the possibility of returned items, I should ensure that my Account contains sufficient collected funds for each of my transactions.

**Overdrafts.** If I do not have sufficient available funds on deposit to cover the amount of a check or transaction (e.g., an automatic payment, ATM withdrawal, or other electronic transfer), E*TRADE Securities and its bank service provider may return the check or reject the transaction without payment. E*TRADE Securities and its bank service provider may elect, however, in their sole discretion to create an overdraft by paying the check or permitting the transaction. Either way, there will be a service fee imposed for each item or transaction.

If E*TRADE Securities and its bank service provider permit an overdraft or otherwise allow my account balance to drop below zero, I agree to pay the amount of the overdraft promptly, without notice or demand from E*TRADE Securities and its bank service provider. Each account owner is jointly and severally responsible for paying any overdrafts created by any authorized signer(s) or party to the account, whether or not the owner participates in the transaction or benefits from its proceeds. I agree that subsequent deposits and other credits to the Account may be used to satisfy an overdraft, regardless of the source of such deposit including, without limitation, deposits of government, welfare, retirement or social security benefits.

The payment by E*TRADE Securities and its bank service provider of any checks or allowance of transactions that create overdrafts in no way obligates them to continue that practice at a later time. They may discontinue permitting overdrafts without cause or notice to me. I shall pay overdrafts upon demand, together with interest on the overdraft at the maximum rate of interest allowed by law for me. E*TRADE Securities and its bank service provider may charge my Account at any time for the amount of interest incurred on an overdraft. If an overdraft is collected through probate, bankruptcy or other judicial proceeding, or is referred to a collection agency or lawyer for collection, I shall pay expenses and costs of collection, including attorney's fees. E*TRADE Securities and its bank service provider may cover any overdraft by debit to any checking, savings or time deposit account of mine without notice to me, but E*TRADE Securities and its bank service provider shall not be obligated to do so.

Notwithstanding the foregoing, no withdrawal will be permitted against an individual retirement account that will result in an overdraft.

### (2) Checkwriting Privileges

By requesting the checkwriting privilege, I authorize E*TRADE Securities to honor checks drawn on my Account, with payment for such checks to be made by withdrawing cash or redeeming securities from my Account. E*TRADE Securities will only honor checks printed by an E*TRADE Securities approved checkbook vendor. Checks ordered from non-E*TRADE Securities approved vendors may result in my checks being rejected for incompatible format, and fees may apply. I agree to pay all fees and charges associated with checkwriting services, as set forth in the then-current fee schedule on the E*TRADE Securities Web site. I understand and agree that original canceled checks will not be returned to me; however, imaged copies are made available online and all checkwriting activity will be reflected on my Account statements. The checkwriting aspects of my Account will be governed by the terms of this Agreement, the Uniform Commercial Code and applicable state and federal law. E*TRADE Securities reserves the right to terminate or limit my checkwriting privileges anytime without notice, for any reason or for no reason. Accounts engaged in excessive checkwriting may be closed immediately or may have their checkwriting privileges terminated or limited at E*TRADE Securities' discretion. When my Account is closed or my checkwriting privileges are terminated, I agree to promptly destroy any unused checks. E*TRADE Securities may require me to provide proof of destruction of my unused checks before releasing the funds in my Account to me. Alternatively, E*TRADE Securities may require me to return my unused checks. The checkwriting privileges described in this Section 4(g)(2) are not available for retirement accounts, except for individual retirement accounts of accountholders who are age 59 ½ or older, who provide proof of age and who waive tax withholding. I understand that by writing a check against my individual retirement account, I am requesting a distribution from the account; accordingly, if I write a check to purchase an investment or other asset, it will be held outside of my individual retirement account and will not receive any tax benefits of the account. If I do not provide written waiver of tax withholding, or revoke my waiver, my checkwriting privileges will be terminated.

**Signature Card.** E*TRADE Securities may require me to provide a proper sample signature on a signature card before I participate in E*TRADE Securities' checkwriting service. If my Account is a joint Account, I may be required to provide a proper sample signature from each Account holder. If I am requesting checkwriting or debit card services for an individual retirement account, I understand and agree that only I may authorize withdrawals from the account, and I certify that each withdrawal is at my request and under my signature or PIN.

**Sufficient Funds.** I will not write checks on my Account in amounts exceeding the Available Funds in the Account. If checks are presented to E*TRADE Securities for payment on the same day as any securities transactions in my Account (whether pursuant to my request or otherwise), the securities transactions will be effected before the checks are paid. If, following all such securities transactions and debits associated with previously conducted transactions, the amount of Available Funds in my Account is less than the amount of the check, the check will be dishonored, returned unpaid and marked to indicate insufficient funds and a returned check fee will be charged against my Account. In the event E*TRADE Securities inadvertently pays such check, I will be responsible for any resulting Debit Balance. I understand that repaying a Debit Balance in an individual retirement account may result in adverse tax consequences to me.

**Stop Payments.** I or any other owner or authorized signer on my Account may request E*TRADE Securities and its bank service provider to stop payment on a check. I understand that there is a fee associated with a stop payment request. My stop payment order must be directed to the E*TRADE Securities Customer Service Department and include the account number, check number, exact amount (dollars and cents), check or transaction date and the name of the payee. E*TRADE Securities and its bank service provider will not be liable for paying a check or transaction over a stop payment order if the order is incomplete or incorrect. E*TRADE Securities and its bank service provider must receive stop payment orders at a time and in a manner which affords them a reasonable opportunity to act upon them.

E*TRADE Securities and its bank service provider are not required to accept oral stop payment orders. If they elect to act upon an oral stop payment order, however, I agree to promptly confirm the order in writing and deliver it to E*TRADE Securities. If I fail to do so within 14 calendar days, they may release the stop payment. E*TRADE Securities records will be conclusive evidence of the existence, details of, and its decision regarding any oral stop payment order or its revocation.

Written stop payment orders are valid for six months. After that time, the check may be paid and charged to my Account unless I renew the stop payment order for an additional fee.

I may not stop payment on electronic, POS debit card transactions, bank checks, or checks or payments guaranteed by E*TRADE Securities. Under certain circumstances, however, I may be able to claim a refund on lost, stolen or destroyed bank checks 90 days following the date of their issuance. Electronic stop payment requests (through E*TRADE Securities automated telephone system) may not be effective in stopping the payment of checks that have been posted to, but not finally paid from, my Account on the preceding day. I may not stop payment of a check that has been converted to an electronic transaction by a merchant. I agree to hold E*TRADE Securities and its bank service provider harmless and indemnify E*TRADE Securities and its bank service provider for any losses, expenses and costs, including attorney's fees, incurred by E*TRADE Securities and its bank service provider for refusing payment of any item on which I have stopped payment or for payment of an item after a stop payment order has expired. A stop payment request will not become effective until E*TRADE Securities receives and has a reasonable amount of time to act on the stop payment request. E*TRADE Securities' receipt of a stop payment request does not guarantee that an item will not be paid. In order to stop payment on a check, E*TRADE Securities must have received the stop payment request and had a reasonable opportunity to act on the request before final payment of the check. E*TRADE Securities may require me to confirm my stop payment request in writing. I will be responsible, and E*TRADE Securities will not be

liable, for any stopped items that clear my Account during this time.

**Loss of Checks.** I agree to notify E*TRADE Securities immediately, and in no event more than 24 hours, after the loss or theft of any check.

**Cooperation in Event of Loss or Fraud.** I agree that, in the event of any loss of checks or fraudulent occurrence in my Account, including the writing of forged checks, the altering of checks written against my Account or the forging of endorsements on checks written against my Account, I will report such loss or fraudulent occurrence promptly to the police. Further, I agree to provide a copy of any police report to E*TRADE Securities on request. I agree to cooperate fully with the police and with E*TRADE Securities in any investigation of such fraudulent occurrence and I will complete any required affidavits promptly, accurately and thoroughly. I understand that, if I fail to do any of these things, I may encounter delays in regaining access to the funds in my Account.

**Indemnification.** I agree to indemnify and hold E*TRADE Securities and its affiliates harmless from and against any Losses arising out of or relating to: (i) the processing, clearing, payment or dishonor of any check written or authorized by me or believed to have been written or authorized by me; and (ii) any actions in stopping, or failing to stop, payment on a check.

**Substitute Checks.** I agree not to deposit substitute checks, as described below, or checks bearing a substitute check legal equivalence statement ("This is a legal copy . . .") to my Account without E*TRADE Securities' prior written consent. Unless E*TRADE Securities agrees otherwise in writing, its acceptance of such checks shall not obligate it to accept such items at a later time, and it may cease doing so without prior notice.

If E*TRADE Securities allows me to deposit substitute checks, I agree to indemnify, defend and hold E*TRADE Securities harmless from all losses, costs, claims, actions, proceedings and attorney's fees that E*TRADE Securities incurs as a result of such checks, including without limitation, any indemnity or warranty claim that is made against E*TRADE Securities because: (a) the check fails to meet the requirements for legal equivalence, (b) a claimant makes a duplicate payment based on the original check, the substitute check, or a paper or electronic copy of either; or (c) a loss is incurred due to the receipt of the substitute check rather than the original check. Upon E*TRADE Securities' request, I agree to provide it promptly with the original check or a copy that accurately reflects all of the information on the front and back of the original check when it was truncated.

I agree not to issue checks with features or marks that obscure, alter or impair information on the front or back of a check or that otherwise prevents E*TRADE Securities or any service provider from capturing such information during automated check processing

**(h) Debit Card Privileges**

Debit Card privileges are a feature linked to my Account and processed through a bank service provider retained by E*TRADE Securities. Funds to pay my Debit Card transactions and any related fees will be debited from my Account. E*TRADE Securities may change the bank service provider from time-to-time. E*TRADE Securities anticipates that its affiliate, E*TRADE Bank, will become the bank service provider for most services in 2005. Certain additional terms and conditions apply to the Debit Card feature, as set forth below.

If I have checkwriting privileges, I may request that E*TRADE Securities and its bank service provider issue a debit card ("Debit Card") to me or activate a Debit Card sent to me. I authorize E*TRADE Securities to debit my Account to satisfy all Debit Card transactions. I understand that I am responsible for all Debit Card use to the maximum extent permitted by law. This section contains terms, conditions and disclosures applicable to all ATM and Point-of-Sale Terminal Services, and the use of Debit Cards to allow me to access the funds in my Account. Certain information concerning charges applicable to these services is contained in the schedule of fees for non-trading services which is available on the E*TRADE Securities Web site. The Debit Card privileges described in this Section 4(h) are not available for retirement accounts, except for individual retirement accounts of accountholders who are age 59 Â‚Â½ or older, who provide proof of age and who waive tax withholding.

**(1) Use of Debit Cards.** I can perform the following transactions with my Debit Card:
- Pay for purchases at merchant places that accept the Debit Card.

I also have the ability with my Debit Card to perform the following transactions at any ATM bearing the E*TRADE logo:
- Determine the available balance in my Accounts;
- Undertake any additional service offered by the ATM.

Debit Cards are currently accepted at PLUS® or Visa® merchant locations and at Visa® member institutions. Some services may not be available at all ATM or point of use "POS" terminals.

Cards can be used at ATM and POS terminals that are part of the networks in which E*TRADE Securities' bank service provider participates. E*TRADE Securities' bank service provider currently participates in the PLUS® ATM network, and the PLUS and Visa® POS networks.

My Debit Card cannot be used without a personal identification number ("PIN") at ATMs and most POS terminals. At some POS terminals I may be asked to sign a sales slip or provide identification, rather than enter my PIN, for certain Debit Card transactions. At some merchants, such as gas stations, I may not be required to sign my name or enter my PIN for a Debit Card purchase.

To avoid Point of Sale fees, I must select the "pay by credit" option (even though this is not a credit card transaction), rather than the "pay by debit" option. If I select the "pay by debit" option and enter my PIN, I will be responsible for any related Point-of-Sale fees.

**Holds on my Account.** When I use my Debit Card to pay for goods or services, certain merchants may ask E*TRADE Securities to authorize the transaction in advance and may estimate its final value. When E*TRADE Securities authorizes the transaction, E*TRADE Securities commits to make the requested funds available when the transaction finally settles and may place a temporary hold on my Account funds for the amount indicated by the merchant. E*TRADE Securities also may add an amount for certain merchants to ensure that sufficient funds will be available to cover the ultimate transaction. Until the transaction finally settles or E*TRADE Securities determines that it is unlikely to be processed, the funds subject to the hold will not be available to me for other purposes. E*TRADE Securities will only charge my Account for the correct amount of the final transaction, however, and will release any excess amount when the transaction finally settles.

**ATM Safety.** I agree to exercise discretion when using ATMs. If there are any suspicious circumstances, I will not use the ATM. If I notice anything suspicious while transacting business at the ATM, I will cancel the transaction, pocket my card and leave. I will be careful when using the ATM and be aware of the surroundings, especially at night or in isolated areas. I will park near the ATM in a well-lighted area. At night, I will have someone accompany me when possible. I will not approach a dark ATM, or accept assistance from anyone while using the ATM. I will not display my cash;

instead, I will pocket it and count it later in the safety of my office or home. I will be sure to save my transaction slips, and check them against my statements regularly. I will prepare deposits at home to minimize my time at the ATM. I will always secure my Debit Card just like I would my cash, checks and credit cards. I will report all crimes to the ATM operator and local law enforcement officials immediately. E*TRADE Securities does not guarantee my safety while using the ATM.

**Card and PIN Security.** I agree not to disclose or otherwise make my card or PIN available to others. For security reasons, I agree not to write my PIN on my Debit Card or keep it in the same location as my card. My Debit Cards must be returned to us upon request.

**Refunds On Purchases.** Cash refunds will not be made to me for purchases made with my Debit Card. If a merchant gives me a credit for merchandise returns or adjustments, it may do so by processing a credit adjustment, which E*TRADE Securities will apply as a credit to my Account. I understand that E*TRADE Securities is not responsible for the tax consequences of such credit adjustment to my Account.

**Foreign Transactions.** If I conduct a transaction in a currency other than U.S. dollars, Visa will convert any related debit or credit into U.S. dollars in accordance with its then current policies. Visa currently uses a conversion rate that is either: (a) selected from a range of rates available in the wholesale currency markets on the processing date (note: this rate may be different from the rate Visa itself receives), or (b) the government-mandated rate. The conversion rate may be different from the rates in effect on the date of my transaction and the date it is posted to my account. E*TRADE Securities will impose a charge equal to 1% of the transaction amount (including credits and reversals) for each foreign transaction that I conduct.

**ATM and POS Limitations.** I may withdraw up to $500 per calendar day per Debit Card. My daily Debit Card purchase limit is the amount of available funds in my Account, up to my Debit Card daily purchase limit, which is initially set at to $5,000 per calendar day and is subject to change from time to time. I do not have a right to stop payment on any card sales draft or cash withdrawal slip originated by the proper use of My Debit Card. For security reasons, there may be times when E*TRADE Securities may further limit this amount. Different limitations may apply at terminals that are not owned and operated by E*TRADE.

**(2) Preauthorized/Automatic Deposits and Transfers.** Pre-authorized electronic fund transfers (direct deposits) may be made to my Account at E*TRADE Securities from a third party (e.g., Social Security, a pension fund, or my employer) or from my Account to a third party (e.g., checks converted to electronic ACH transactions, and recurring mortgage or insurance payments through the ACH). The term, "pre-authorized transfer", does not include: (a) transactions initiated by check, draft or similar paper instrument, (b) transfers to or from business or other non-personal accounts, (c) individual transfers E*TRADE Securities or its bank service provider initiates under an agreement with me, but without my specific request (e.g., automatic savings or automatic loan payments to E*TRADE from my account), or (d) wire transfers initiated by telephone. I note that if federal recurring or other electronic payments are made into my Account, the payments may be affected by a change in account status or transfer. If I plan to transfer my Account or change its status, I agree to speak with E*TRADE Securities at 1-800-ETRADE1 (1-800-387-2331) in advance about the impact the change may have on my electronic fund transfer services. From outside the U.S., dial 1-678-624-6210.

**(3) Documentation.**

**Receipts.** I can get a receipt at the time I make any transfer to or from my Account using one of E*TRADE ATMs. All ATM transactions are subject to later verification by E*TRADE Securities.

**Preauthorized Credits.** If I have arranged to have direct deposits made to my Account at least once every 60 days from the same person or company, I can view online at the E*TRADE Securities website or call E*TRADE Securities at 1-800-ETRADE1 (1-800-387-2331) to find out whether or not the deposit has been made. From outside the U.S., dial 1-678-624-6210.

**Varying Preauthorized Transfers.** If I have arranged in advance to make regular payments out of my Account and they may vary in amount, the person I am going to pay will tell me 10 days before each payment when it will be made and how much it will be. I may choose instead to get this notice only when the payment would differ by more than a certain amount from the previous payment or when the amount would fall outside certain limits that I set.

**Account Statements.** I will get a monthly account statement unless there are no transfers or transactions in a particular month. In any case I will get a statement at least quarterly. In addition, all withdrawals from my individual retirement account will be reported to the IRS as normal distributions in the taxable year in which the check or debit clears my account at E*TRADE Securities, regardless of the date on the check or debit transaction. (I agree that if I require proof that a particular withdrawal occurred in a particular year, such as to satisfy minimum annual distribution requirements, or if I intend to close my account, I will make a regular distribution request using the appropriate form.)

**(4) Liability For Failing To Make Transfers.** If E*TRADE Securities does not complete an electronic fund transfer to or from my Account on time or in the correct amount according to its agreement with me, E*TRADE Securities may be liable for my losses or damages in certain circumstances. However, E*TRADE Securities will not be liable, for instance, if:
- Through no fault of E*TRADE Securities, I do not have enough available funds in my Account to make the transaction;
- The transfer would create an overdraft;
- The ATM where I made the transaction did not have enough cash or other supplies;
- Circumstances beyond E*TRADE Securities' control (such as fire, flood, water damage, power failure, strike, labor dispute, computer breakdown, telephone line disruption or a natural disaster) or a rolling blackout prevent or delay the transfer despite reasonable precautions taken by E*TRADE Securities;
- The system, ATM or POS terminal was not working properly and I knew about the problem when I started the transaction;
- The funds in my account are subject to legal process, an uncollected funds hold or are otherwise not available for withdrawal;
- The information supplied by me or a third party is incorrect, incomplete, ambiguous or untimely;
- E*TRADE Securities has reason to believe the transaction may not have been authorized by me; or
- The transaction cannot be completed because my ATM card is damaged.

**(5) My Liability for Unauthorized Electronic Fund Transfers.** I agree to tell E*TRADE Securities AT ONCE if I believe my Debit Card, PIN or password has been lost or stolen. Telephoning is the best way of keeping my possible losses down. The E*TRADE Securities number is 1-800-ETRADE1 (1-800-387-2331). I could lose all the money in my Account. If I tell E*TRADE Securities within two business days, I can lose no more than $50 if someone used my card, PIN or password without my permission. If I do NOT tell E*TRADE Securities within two business days after I learn of the loss or theft of my card, PIN or password, and E*TRADE Securities can prove it could have stopped someone from using my card, PIN or password without my permission if I had told E*TRADE Securities, I could lose as much as $500. Unless E*TRADE Securities determines that I was

grossly negligent or fraudulent in the handling of my account or Debit Card, I will not be liable for the $50 or $500 amounts described above for transactions conducted with a Visa Card (Note: This additional limit on liability does not apply to ATM transactions or to transactions using my PIN that are not processed by Visa).

Also, if my statement shows transfers that I did not make, I will tell E*TRADE Securities at once. If I do not tell E*TRADE Securities within 60 days after the statement was mailed to me, I may not get back any money I lost after the 60 days if E*TRADE Securities can prove that it could have stopped someone from taking the money if I had told E*TRADE Securities in time.

If a good reason (such as a long trip or a hospital stay) kept me from telling E*TRADE Securities, E*TRADE Securities will extend the time periods.

If, notwithstanding the foregoing, the law requires E*TRADE Securities to return additional amounts to my individual retirement account, I agree personally to indemnify and hold E*TRADE Securities harmless for such additional amounts.

**Business and Other Non-personal Accounts.** E*TRADE Securities' obligations and the limitation on customer liability, set forth in this section (5), as well as those that appear with periodic statements, do not apply to business or other non-personal accounts. Thus, if I am a business or other entity which is not a natural person, I must notify E*TRADE Securities immediately if I discover any unauthorized transactions or errors on my accounts, and must send E*TRADE Securities a written notice of the problem within a reasonable time (not to exceed 14 days from the date of discovery or my receipt of the first statement or notice reflecting the problem, whichever occurs first). Under no circumstances will E*TRADE Securities be liable for any special or consequential damages involving such business accounts. If I am a business or other entity which is not a natural person that owns an accounts, I assume sole responsibility for any unauthorized use of the account's cards and/or PIN, and shall indemnify, defend and hold E*TRADE Securities harmless from all claims, actions, proceedings, losses and damages related to or arising out of any unauthorized transactions.

**How to Stop Preauthorized Transfers From My Account.** If I have told E*TRADE Securities in advance to make regular payments out of my account, I can stop any of these payments by going to E*TRADE Securities' web site (www.etrade.com) to the same location where I had authorized such payments to be made.

E*TRADE Securities must receive my request at least three business days before the payment is scheduled to be made. [Note: If I fail to give E*TRADE Securities my request at least three business days prior to a transfer, E*TRADE Securities may attempt, at its sole discretion, to stop the payment. E*TRADE Securities assumes no responsibility for its failure or refusal to do so, however, even if E*TRADE Securities accepts the request for processing.] My request should specify the transaction that I want to stop and follow the instructions on the web site. Unless I request E*TRADE Securities via the web site that all future transfers to a specific recipient are to be stopped, E*TRADE Securities will treat my stop payment order as a request concerning the one transfer only. I also agree to notify the designated payee in writing that I am stopping payment, as E*TRADE Securities will not do so.

**Lost or Stolen Card/Pin/Password.** If I believe my card, PIN or password has been lost or stolen, or that someone has transferred or may transfer money from my Account without my permission, call E*TRADE Securities at 1-800-ETRADE1 (1-800-387-2331), between 7 am to midnight ET, any day of the week, or write E*TRADE Securities at the following address:

ETRADE Clearing LLC
Attn: Cash Management Services
P.O. Box 1542
Merrifield, VA 22116-1542

In Case of Errors or Questions About My Electronic Transfers. I will call E*TRADE Securities at the number or write E*TRADE Securities at the address described above as soon as I can if I think my statement or receipt is wrong or if I need more information about an electronic transaction. E*TRADE Securities must hear from me no later than 60 days after E*TRADE Securities sent the FIRST statement on which the problem or error appeared. When I contact E*TRADE Securities, I will

1. Tell E*TRADE Securities my name, Account number, and Debit Card number;
2. Describe the error or the transfer I am unsure about, and explain as clearly as I can why I believe it is an error or why I need more information.
3. Tell E*TRADE Securities the dollar amount of the suspected error.

I understand that it would be helpful if I provided E*TRADE Securities with any supporting documentation related to the error. If I tell E*TRADE Securities orally, E*TRADE Securities may require that I send E*TRADE Securities my complaint or question in writing within 10 business days.

E*TRADE Securities will determine whether an error occurred within 10 business days after E*TRADE Securities hears from me and will correct any error promptly. If E*TRADE Securities needs more time, however, E*TRADE Securities may take up to 45 days to investigate my complaint or question. If E*TRADE Securities decides to do this, E*TRADE Securities will credit my account within 10 business days (5 business days in some cases for Visa transactions) for the amount I think is in error, so that I will have the use of the money during the time that it takes E*TRADE Securities to complete its investigation. In certain instances, E*TRADE Securities may provide credit sooner. If E*TRADE Securities asks me to put my complaint or question in writing and E*TRADE Securities does not receive it within 10 business days, E*TRADE Securities may not credit my account.

For errors involving new accounts, POS, or foreign-initiated transactions, E*TRADE Securities may take up to 90 days to investigate my complaint or question. For new accounts, E*TRADE Securities may take up to 20 business days to credit my account for the amount I think is in error.

E*TRADE Securities will tell me the results within three business days after completing its investigation. If E*TRADE Securities decides that there was no error, E*TRADE Securities will send me a written explanation. I may ask for copies of the documents that E*TRADE Securities used in its investigation.

**ATM Fees.** If I conduct a transaction at an ATM that is not operated by E*TRADE Securities or its affiliates, I may be charged a fee by the ATM operator or any network used, and I may be charged a fee for a balance inquiry even if I do not complete a funds transfer.

**Change in Terms/Termination of Service.** E*TRADE Securities may change the terms or terminate my Debit Card privileges at any time, with or without cause and without affecting my outstanding obligations under this Agreement. E*TRADE Securities may terminate or suspend my Debit Card services immediately if I breach this or any other agreement with E*TRADE Securities; E*TRADE Securities has reason to believe that there has been or may be an unauthorized use of my Account, ATM card or PIN; there are conflicting claims to the funds in my account; or I request that E*TRADE

Securities does so. I also have the right to cancel my Debit Card privileges for any and all Accounts anytime on delivery to E*TRADE Securities of written notice of such cancellation. If I ask E*TRADE Securities to terminate my account or the use of my Debit Card privileges, I will remain liable for subsequent transactions performed by me or any authorized user. When my Account is closed or my Debit Card privileges are canceled or terminated, I agree to promptly destroy my Debit Card. E*TRADE Securities may require me to provide proof of destruction of my Debit Card before releasing funds in the Account to me. Alternatively, I agree to return my Debit Card to E*TRADE Securities promptly on E*TRADE Securities' request. I also acknowledge that E*TRADE Securities has the right to cause an ATM to retain my Debit Card anytime without notice to me.

**(i) Cash Sweep and Payment of Interest on Cash Balances**
I understand that E*TRADE Securities may, in its discretion, pay me interest on any Cash Balances awaiting investment or E*TRADE Securities may permit me to invest or place available Cash Balances in money market funds, FDIC-insured bank deposit accounts maintained with E*TRADE Bank or other banks or such other accounts or arrangements as E*TRADE Securities may make available to me ("Sweep Products" and, together with Cash Balance, "Sweep Options"). I understand that my Account statements will reflect the payment of any Cash Balance and all sweep transactions (including purchases, redemptions, dividends and dividend reinvestments). These Account statements are provided in lieu of separate confirmations of sweep transactions.

E*TRADE Securities may change or replace the Sweep Options available to me at its discretion. Except as provided below, E*TRADE Securities will give me advance notice of any such change in Sweep Options. Unless I notify E*TRADE Securities of an objection to any such change, I authorize E*TRADE Securities to withdraw cash or redeem securities maintained in the prior Sweep Option and to invest or place the proceeds in the replacement Sweep Option. I understand that I will be bound by the terms and conditions for the Sweep Option that is associated with my account. In addition, I understand that different Sweep Options may be offered by E*TRADE Securities in connection with various accounts, services and products. If I decide to enroll an Account in a new service with a different Sweep Option, then I authorize E*TRADE Securities to withdraw cash or redeem securities maintained in the prior Sweep Option and to reinvest or place the proceeds in the new Sweep Option without notice to me.

Cash Balances are unsecured general obligations of E*TRADE Clearing. E*TRADE Clearing is a securities broker-dealer, not a bank or other depository institution. A Cash Balance is not a deposit or other obligation of any bank or other depository institution, and is not insured by the FDIC.

**Interest Rate Information.** Interest paid to me on my Cash Balance will be calculated using the interest rates, calculation methodology and compounding frequency, set from time-to-time by E*TRADE Clearing. The current simple interest rate, at which interest is paid on Cash Balances and the corresponding annual percentage yield ("APY"), at which Cash Balances would earn interest each year if all interest paid on the Cash Balance remains as a Cash Balance in the account, are as specified in the Rate Sheet at www.etrade.com/rates. The interest rate and APY paid on Cash Balances, calculation methodology and compounding frequency, are subject to change from time-to-time without prior notice by E*TRADE Clearing.

**Cash Balance Sub-Account Structure.** My Cash Balances are held in two separate sub-accounts at E*TRADE Clearing: (1) a transaction sub-account, and (2) a time sub-account. Both sub-accounts generate interest at the same rate and in proportion to their respective balance sizes. Interest will accrue on the combined balances of the Cash Balance sub-accounts. An unlimited number of transfers of funds may be made from the transaction sub-account. However, to minimize regulatory reserve requirements for E*TRADE Clearing's parent depository institution, the number of funds transfers from the time sub-account is limited to six (6) per statement cycle. E*TRADE Clearing will establish and modify from time to time a target balance for the transaction sub-account that is designed to optimize the amounts held over time in the two sub-accounts to permit an unlimited number of monthly transfers from the transaction sub-account and a high average balance in the time sub-account.

Funds available in the Cash Balances will be credited to the appropriate sub-account to maintain a target balance in the transaction sub-account. Up to six (6) transfers a month may be made from the time sub-account to the transaction sub-account. On the sixth transfer, the entire balance in the time sub-account will be automatically transferred to the transaction sub-account. The transaction sub-account balance will be transferred back to the time sub-account at the beginning of the next monthly statement cycle. Cash needed to transfer balances out of Cash Balances will be automatically transferred from any available balances in the transaction sub-account of my Cash Balances.

Monthly statements will be sent to me showing the amounts held as a Cash Balance, the addition or withdrawal of balances to the Cash Balance, but not the transfers between my Cash Balance sub-accounts. Transfers between the two sub-accounts do not affect the amount of interest paid to me.

**Use of Cash Balance and Payment of Fees to Others.** Any Cash Balances are held unsegregated and may be used by E*TRADE Clearing in the conduct of its business, subject to the limitations of Rule 15c3-3 under the Securities Exchange Act of 1934. E*TRADE Clearing derives profits from the spread between its cost of funds (including Cash Balances) and the return on its assets (e.g., loans and other investments it makes), net of expenses. Cash Balances provide a relatively low-cost source of funds to E*TRADE Clearing and thus help contribute to E*TRADE Clearing's profitability.

E*TRADE Clearing may pay or receive certain fees in respect of Cash Balances to or from E*TRADE Securities.

I agree that my Cash Balances in my Account are maintained for securities investment purposes in connection with my brokerage Account, and not solely for the purpose of receiving interest on my Cash Balances. E*TRADE Clearing reserves the right to stop paying interest on my Cash Balances, close my Account or take any other action if E*TRADE Securities or E*TRADE Clearing, in their discretion, conclude that my Cash Balances are maintained solely for the purpose of receiving interest on a Cash Balance. Rates, terms and conditions of the Cash Balances are posted on the E*TRADE Securities Web site. E*TRADE Clearing may increase or decrease the rate of interest or decide to stop or start paying interest, anytime in its discretion.

In the case of Sweep Products, Cash Balances over certain minimum amounts may be automatically invested or placed in the Sweep Product either weekly or daily, depending on the amount of the cash balance and according to a periodic sweep schedule determined by E*TRADE Securities in its discretion. In addition, proceeds from the sale of securities will be swept into the Sweep Product following settlement, provided that the securities sold have been received in good deliverable form prior to Settlement Date. If E*TRADE Securities fails to sweep my Cash Balances according to this Agreement, E*TRADE Securities' liability is limited to the actual amount of interest or dividends I would have earned had the Cash Balances been invested or placed in the appropriate Sweep Product.

I authorize E*TRADE Securities automatically to withdraw cash or redeem securities maintained in a Sweep Product to satisfy any Debit Balance, settle a transaction, serve as collateral for a margin loan, short sale or option position or to satisfy any other indebtedness to E*TRADE Securities or otherwise with respect to the Account in an amount sufficient to satisfy any such obligation. If I intend to provide funds to settle securities transactions, E*TRADE Securities must receive such funds at least one (1) Business Day before the Settlement Date to prevent a withdrawal or redemption from a Sweep Product. I authorize E*TRADE Securities or its affiliate E*TRADE Clearing LLC to act as my agent to purchase and redeem Sweep Products in

8/29/2007 11:52

connection with the investment of Cash Balances under this Agreement.

The Sweep Products may, to the extent permitted by law, include money market funds or other Sweep Products for which E*TRADE Securities or its affiliates receive compensation in connection with the purchase and holding of Sweep Products (such as administration, transfer agency, distribution and shareholder services). For more information on payments regarding money market funds, please go to www.etrade.com/prospectus. E*TRADE Clearing and E*TRADE Securities may receive from E*TRADE Bank or other banks or providers of Sweep Products fees for, among other things, maintaining customer records or providing other services. No portion of these fees will reduce or offset the fees otherwise due to E*TRADE Securities in connection with the Account unless required by law. There may be certain minimum requirements for initial and subsequent investments in the money market funds or other products. Investments in each money market fund are subject to restrictions, charges and expenses described in the applicable prospectus, which I separately will receive and agree to read carefully. **Money market funds are securities that may increase or decrease in value. They are not insured or guaranteed by the FDIC, any other government agency, E*TRADE Securities or E*TRADE Bank, and there can be no assurance that such funds will be able to maintain a stable net asset value of $1 per share.**

**(j) Availability of Funds**
Funds that are received by E*TRADE Securities in good deliverable form and that have been credited to my Account are available immediately for trading, subject to the following sentence, but generally are not available for withdrawal for up to ten (10) Business Days. E*TRADE Securities may, in its sole discretion, impose a longer period during which funds may not be available for trading or withdrawal. E*TRADE Securities reserves the right, in its sole discretion and without advance notice, to refuse certain types of additions of funds to my Account, including third party checks or previously returned items. E*TRADE Securities reserves the right to require that I make requests for withdrawals from my Account in writing. I understand that for cash transfers, the financial institution I designate must be a participant of E*TRADE Securities' Cash Transfer Service and that it is my responsibility to ensure that the instructions and information I provide to E*TRADE Securities in connection with a cash transfer are accurate. I will refer to the E*TRADE Securities Web site for more information regarding acceptable additions of funds to my Account and how to withdraw funds.

E*TRADE Clearing reserves the right to require seven (7) days' prior notice before permitting a withdrawal or transfer of funds from the time sub-account of my Cash Balance. E*TRADE Clearing has no present intention of exercising this provision. However, E*TRADE Clearing may, at its sole discretion, choose to do so in the future.

**(k) Wire Transfers and Check Disbursements.**
By sending E*TRADE Securities a wire or check disbursement request (whether by telephone, electronically or in writing), I authorize E*TRADE Securities and its bank service provider to act on my behalf to initiate the wire transfer or check disbursement. On receipt of a wire transfer or check disbursement request by E*TRADE Securities, E*TRADE Securities will transmit payment instructions to the applicable bank. If a wire transfer or check disbursement request is received after the relevant cutoff time, my request may be treated as if it were received the next Business Day. E*TRADE Securities also may reject wire transfer or check disbursement requests.

It is my responsibility to ensure that my instructions are accurate before requesting E*TRADE Securities to initiate a wire transfer or check disbursement. A wire or check disbursement request cannot be amended or canceled after E*TRADE Securities receives it. E*TRADE Securities may in its discretion attempt to abide by a subsequent request for a change, but it is not obligated to do so. I agree to indemnify and hold E*TRADE Securities and its affiliates harmless from any Losses arising out of or relating to an attempt to amend or cancel a wire transfer or check disbursement request. In addition, if I request a stop-payment on any check issued in response to a check disbursement request, I understand that I may not have access to the funds for at least sixty (60) days.

If my wire transfer or check disbursement request involves a currency other than U.S. dollars, my funds will be exchanged for such currency at the current rate of exchange according to E*TRADE Securities' standard business procedures. I am aware that currency exchange rates fluctuate over time and I accept the risks of such fluctuation between the time I send a wire transfer or check disbursement request and the time the wire transfer or check disbursement is final.

If I arrange for a wire transfer to be directed to my Account, I am responsible for ensuring that such wire is initiated properly, addressed properly to E*TRADE Securities' bank account and bears appropriate wire instructions in exactly the form required by E*TRADE Securities for identification of me and my Account. I understand that any erroneous, mismatched or incomplete identifying information on an incoming wire transfer may result in such wire being rejected, lost, posted to an incorrect account or returned to the originating bank without notice to me and I agree to indemnify and hold E*TRADE Securities and its affiliates harmless from any Losses arising out of or relating to any erroneous, mismatched or incomplete identifying information on an incoming wire.

**(l) Requesting Certificates**
I authorize E*TRADE Securities to register any Securities and/or Other Property in my Account in the name of E*TRADE Securities or any other nominee, including sub-custodians, or to cause the Securities and/or Other Property to be registered in the name of, or in the name of any nominee of, a recognized depository clearing organization. My ownership of these Securities and/or Other Property is reflected in E*TRADE Securities' records. Without abrogating any of E*TRADE Securities' rights under this Agreement and subject to prior satisfaction of any indebtedness I may have to E*TRADE Securities, I am entitled to receive physical delivery of fully paid securities from my Account. On my written instructions, and on paying any applicable fees (as described on the E*TRADE Securities Web site), any certificate that is capable of being produced and obtained by E*TRADE in physical form will be sent to me on my request.

**(m) Personal Information**
The respective rights and responsibilities of E*TRADE Securities and me regarding the collection, processing and use of my personal information and my rights to limit the use and disclosure of such information, are set forth in the Privacy Statement published on the E*TRADE Securities Web site, as amended from time to time. Such rights and responsibilities are further defined by applicable laws and regulations of national and state governments and international bodies. In the event of any controversy regarding E*TRADE Securities' collection, use, processing, transfer, or receipt of any information about me, I agree that my remedies will be expressly limited to those specifically provided by the applicable laws and regulations, in accordance with this Agreement. I authorize E*TRADE Securities from time to time to obtain reports concerning my credit standing and business conduct (and my spouse's if I live in a community property state). I also authorize E*TRADE Securities, without notifying me, to request a new credit report in connection with any review, extension or renewal of my Account. On written request, E*TRADE Securities will advise me whether it obtained credit reports, and if so, will provide the name and address of the reporting agency that furnished the reports. In addition, I understand that E*TRADE Securities reserves the right to report to consumer and securities credit reporting agencies any Debit Balance or negative credit information pertaining to any Account held by me at E*TRADE Securities. I authorize E*TRADE Securities to share credit bureau information and any other personal information that E*TRADE Securities obtains with its affiliates and with unaffiliated third parties in accordance with the E*TRADE Securities Privacy

000014

Statement.

**(n) Interest Charges on Debit Balances**
I will be charged interest on any Debit Balance in any of my Accounts, as disclosed to me pursuant to the provisions of Rule 10b-16 under the Securities Exchange Act of 1934 and on any and all monies owed by me to E*TRADE Securities following termination of my Account. Additional information and a detailed explanation of the computation of interest charges applicable to Debit Balances and Margin Accounts is located under "Margin Accounts" and is available on the E*TRADE Securities Web site.

**(o) Satisfaction of Indebtedness**
I agree to satisfy any indebtedness to E*TRADE Securities and pay any Debit Balance in any of my Accounts on demand. My Account will not be closed until I cause to be delivered to E*TRADE Securities all Securities and/or Other Property that the Account is short and all funds to pay in full for all Securities and/or Other Property that the Account is long. If I have a Debit Balance in my Account and I own an interest in any other Account (including those accounts held by me with affiliates of E*TRADE Securities), E*TRADE Securities may, to the extent permitted by law, effect a transfer or demand a distribution from such other Account to cover any Debit Balance due to E*TRADE Securities, without notice to me. I agree that, on E*TRADE Securities' written demand, I will execute all documents necessary to effect a distribution from such other Account and to cause such funds to be paid immediately in order to satisfy my indebtedness to E*TRADE Securities. E*TRADE Securities' rights under this paragraph are in addition to and with full reservation of E*TRADE Securities' rights to take any additional action, including legal action, to recover any indebtedness I may owe to E*TRADE Securities.

**(p) Lien and Liquidation; Remedies**
I agree that all Securities and/or Other Property held in my Accounts (including those accounts held by me with affiliates of E*TRADE Securities) and all rights, whether due or not, that I may have against E*TRADE Securities will be subject to a first, perfected and prior lien, security interest and right of set-off and held as security by E*TRADE Securities or its affiliates for the discharge of any indebtedness or obligation I may have to E*TRADE Securities, however such obligation may have arisen. I understand that E*TRADE Securities, to the extent permitted by law, may anytime and without giving me prior notice, use, liquidate and/or transfer any or all Securities and/or Other Property to satisfy any indebtedness or obligation to E*TRADE Securities, however such obligation may have arisen. In the event of a breach or default by me under this Agreement, E*TRADE Securities will have the rights and remedies available to a secured creditor under all applicable laws in addition to the rights and remedies provided in this Agreement.

I further agree that if: (i) I default on any of my obligations under this Agreement, (ii) I become bankrupt, insolvent or subject to a similar condition or subject to any bankruptcy, reorganization, insolvency or other similar proceeding, or (iii) E*TRADE Securities, in its discretion, deems it advisable for its protection, E*TRADE Securities may, anytime and without prior notice to me: (a) cancel, terminate, accelerate, liquidate and/or close out any or all agreements or transactions between me and E*TRADE Securities or otherwise relating to the Account and calculate damages in a manner it believes appropriate, (b) pledge, transfer or sell any Securities and/or Other Property in the Account (including those accounts held by me with affiliates of E*TRADE Securities) or any other Account in which I have an interest, either individually or jointly with others, or (c) take any other action as E*TRADE Securities, in its discretion, deems appropriate with respect to any of the foregoing and apply the proceeds to the discharge of the obligation. In pursuing the remedies available to it, E*TRADE Securities may, without limiting its rights under this paragraph, set off amounts that I owe to it against any amounts that it owes to me and I will remain liable for any deficiency. I agree to indemnify and hold E*TRADE Securities and its affiliates harmless from and against any Losses incurred in connection with enforcing its lien or any other remedies available to it. In enforcing its rights hereunder, E*TRADE Securities may act in its discretion without regard to any tax or other consequences that I may face as a result of such actions.

**(q) Disclaimer of Liability**
**I understand and agree that E*TRADE Securities and its affiliates will not be liable to me or to third parties, or have any responsibility whatsoever, for: (a) any Losses arising out of or relating to a cause over which E*TRADE Securities or its affiliates do not have direct control, including the failure of electronic or mechanical equipment or communication lines, telephone or other interconnect problems, unauthorized access, theft, operator errors, government restrictions, force majeure (e.g., earthquake, flood, severe or extraordinary weather conditions, natural disasters or other act of God, fire, acts of war, terrorist attacks, insurrection, riot, strikes, labor disputes or similar problems, accident, action of government, communications, system or power failures and equipment or software malfunction), exchange or market rulings or suspension of trading; or (b) any special, indirect, incidental or consequential damages (including lost profits, trading losses and damages) that I may incur in connection with my use of the Service provided by E*TRADE Securities under this Agreement.**

**(r) Restrictions on Account Services**
I understand that E*TRADE Securities may place trading, disbursement, service or other restrictions on my Account for reasons including court order, tax levy or garnishment, request of a government agency or law enforcement authority, a Debit Balance or margin deficiency in my Account, or in the event of a dispute between joint Account holders. I understand that E*TRADE Securities may be required to liquidate or close out Securities and/or Other Property in my Account to satisfy any such court order, garnishment, tax levy or other legal obligation. E*TRADE Securities will not be held liable for any Losses that arise out of or relate to any such transaction and I agree to indemnify and hold E*TRADE Securities and its affiliates harmless from and against any Losses they may incur in taking such actions.

**(s) Termination of Accounts**
I may close my Account anytime, after all Debit Balances are paid, on written or oral notice to E*TRADE Securities. E*TRADE Securities reserves the right to terminate my Account or to block my access to the Service without notice, for any reason or for no reason. The terms and conditions of this Agreement will survive termination of my Account and will continue to apply to any disputed or other remaining matters involving my relationship with E*TRADE Securities. After the termination of my Account, I will remain liable to E*TRADE Securities for payment of any indebtedness or obligation to E*TRADE Securities, plus interest as provided under this Agreement.

**(t) Transfer of Accounts**
By submitting an account transfer request, I authorize E*TRADE Securities to act on my behalf to initiate a transfer of the Securities and/or Other Property in my Account to an account I have established with another broker-dealer. Once E*TRADE Securities receives a transfer request in good order, E*TRADE Securities will submit the instruction to the other firm, which is then responsible to facilitate delivery/receipt of the assets in question. E*TRADE Securities may, under certain circumstances, reject the transfer request before or after initiation and I will be notified of any such rejection electronically, by telephone or otherwise. E*TRADE Securities is not liable for any Losses I may sustain in connection with the Securities and/or Other Property in the Account between the time that it decides to reject a transfer request and my receipt of notice of the rejection. It is my responsibility to ensure that my instructions are accurate before submitting a transfer request to E*TRADE Securities. A transfer request cannot be amended or canceled after E*TRADE Securities receives and initiates the transfer. E*TRADE Securities may in its discretion attempt to abide by a subsequent request for a change to a transfer request, but it is not obligated to do so, and E*TRADE Securities will not liable for any Losses that arise out of or

relate to an attempt to amend or cancel a transfer request. If I arrange for a transfer to be directed to my E*TRADE Securities Account by contacting the delivering firm directly, I am responsible for ensuring that such transfer is initiated properly and that E*TRADE Securities' instructions are given to the delivering firm in exactly the form required by E*TRADE Securities for identification of me and my Account for proper transaction posting. I understand that any erroneous, mismatched, or incomplete identifying information on an incoming or outgoing transfer may result in such transfer being rejected, lost, posted to an incorrect account, or returned to the originating firm without notice to me, and I agree to indemnify and hold E*TRADE Securities and its affiliates harmless from and against any Losses arising out of or relating to: (i) any erroneous, mismatched, or incomplete identifying information on a transfer; and (ii) any transfer for which E*TRADE Securities is in compliance with applicable self-regulatory requirements dealing with account transfers.

Unless otherwise indicated on E*TRADE Securities' account transfer form, I authorize E*TRADE Securities to liquidate any positions in nontransferable assets (including E*TRADE Funds), deduct any Debit Balance and transfer the resulting balance. I understand that after receiving a transfer request, E*TRADE Securities will cancel, or will instruct the delivering firm to cancel, all open orders for my account and to fulfill the transfer request as needed.

Back to top

### 5. E*TRADE SECURITIES BROKERAGE SERVICES

I ACKNOWLEDGE THAT I ALONE AM RESPONSIBLE FOR DETERMINING THE SUITABILITY OF MY INVESTMENT CHOICES IN LIGHT OF MY PARTICULAR CIRCUMSTANCES. I UNDERSTAND THAT E*TRADE SECURITIES ASSUMES NO RESPONSIBILITY FOR SUCH DETERMINATION. **As a self-directed investor, I assume full responsibility for each and every transaction in or for my Account and for my own investment strategies and decisions. I understand and agree that E*TRADE Securities and its affiliates will have no liability whatsoever for the results of my investment strategies, transactions and decisions.**

**(a) No Advice**
Unless otherwise specified in writing, E*TRADE Securities does not and will not provide me with any legal, tax, estate planning or accounting advice or advice regarding the suitability, profitability or appropriateness for me of any security, investment, financial product, investment strategy or other matter. I acknowledge that E*TRADE Securities employees are not authorized to give any such advice, and I will neither solicit nor rely on any investment advice from any E*TRADE Securities employee. Unless otherwise specified, any information provided through the Service will not be used or considered by me as a recommendation that I buy, sell or hold a particular security or pursue any particular investment strategy. This information is not an offer, or a solicitation of an offer, to buy or sell securities on behalf of E*TRADE Securities. I also acknowledge that E*TRADE Securities neither assumes responsibility for nor guarantees the accuracy, currency, completeness or usefulness of information, commentary, recommendations, advice, investment ideas or other materials that may be accessed by me through the Service. This includes bulletin boards, message boards, chat services or other online conference or telecast by third party providers through E*TRADE Securities. If I choose to rely on such information, I do so solely at my own risk. I understand that the research, analysis, news or other information made available through the Service is not personalized or in any way tailored to reflect my personal financial circumstances or investment objectives and the securities and investment strategies discussed may not be suitable for me.

**(b) Advisory Services and Trading Authorization**
Through the E*TRADE Referral Service, E*TRADE Securities may make information available to me about various investment advisers (Authorized agent(s)/Adviser(s)). I may contract with these Authorized agent(s)/Adviser(s) to manage my Account ("Advisory Account"). I may also contract with other Authorized agent(s)/Adviser(s) that I independently identify to manage my Advisory Account. E*TRADE Securities will have no responsibility or liability for any advice, recommendation or trading by such Authorized agent(s)/Adviser(s). I understand that E*TRADE Securities will maintain an Advisory Account for me and buy, sell or exchange securities or other products in accordance with instructions from me or my Authorized agent(s)/Adviser(s). I understand that this Agreement governs my Advisory Account and my relationship with E*TRADE Securities. Without limiting any other provision of this Agreement, I understand and agree that as among me, my Authorized agent(s)/Adviser(s) and E*TRADE Securities:

1. I have selected my Authorized agent(s)/Adviser(s) based on criteria that I deem appropriate for my investment needs and will not hold E*TRADE Securities responsible for my decision to hire the Authorized agent(s)/Adviser(s).
2. All decisions relating to my investment or trading activity shall be made solely by me or my Authorized agent(s)/Adviser(s) identified by me to E*TRADE Securities.
3. E*TRADE Securities is authorized to accept and act upon the instructions of my Authorized agent(s)/Adviser(s) with respect to my Advisory Account in accordance with this Agreement until E*Trade Securities receives my written notice revoking such authority. This authorization shall be applicable to all assets I hold in the specified Advisory Account.
4. E*TRADE Securities is further authorized to act upon my Authorized agent(s')/Adviser(s') instructions to aggregate transaction orders for my Advisory Account with orders for one or more other accounts over which the Authorized agent/Adviser has trading authorization or to accept or deliver assets in transactions executed by other broker-dealers where the Authorized agent/Adviser has so aggregated orders. I agree that if any such aggregated order is executed in more than one transaction my portion of such order may be deemed to have been at the weighted average of the prices at which all of such transactions were executed.
5. My Authorized agent(s)/Adviser(s) may be affiliated with E*TRADE Securities.
6. No Authorized agent/Adviser, whether or not it is affiliated with E*TRADE Securities, is authorized to act or make representations on behalf of E*TRADE Securities.
7. E*TRADE Securities has no responsibility and will not participate in or review the Authorized agent(s')/Adviser(s') trading decisions or in any way review, monitor or supervise the suitability or frequency of the investment or trading activity in my Advisory Account. My Authorized agent(s)/Adviser(s) has collected from such information as is required to determine the suitability of my investment or trading activity.
8. E*TRADE Securities will have no duty to inquire into the authority of the Authorized Agent(s)/Adviser(s) to engage in particular transactions or investment strategies or to monitor the terms of any oral or written agreement between me and the Authorized Agent(s)/Adviser(s).
9. I shall indemnify and hold harmless E*TRADE Securities, its directors, employees, agents and affiliates from and against any and all losses, claims or financial obligations that may arise from any act or omission of my Authorized agent(s)/Adviser(s) with respect to my Advisory Account.

**(c) Transaction Confirmations and Account Statements**
It is my responsibility to review all confirmations of transactions immediately on receipt, whether delivered to me electronically, by IVR, by postal mail or otherwise. I will notify E*TRADE Securities of any objection to the terms of a confirmation within two (2) days after my receipt of the confirmation. E*TRADE Securities is entitled to treat the terms of the confirmation as accurate and conclusive unless I object within two (2) days of receipt. In all cases, E*TRADE Securities reserves the right to determine the validity of my objection. If I object to a transaction for any reason, I understand that I will attempt to limit any Losses that may result from such transaction. I understand and agree that unless I take such action to limit Losses, I will bear sole

responsibility for any and all further Losses that may occur thereafter, even if my objection to the initial transaction is ultimately determined to be valid.

I agree that E*TRADE Securities is not obligated to provide me with any trade status report other than the official confirmation. E*TRADE Securities may provide electronic or other trade status reports as a courtesy only, but E*TRADE Securities does not guarantee the accuracy or timeliness of such interim trade status reports and will not be liable for any Losses arising out of or relating to delayed issuance or failure to issue an electronic or other trade status report, or from errors in such reports that are subsequently corrected by E*TRADE Securities in official confirmations.

It is my responsibility to review all Account statements promptly on receipt, whether delivered to me electronically, by IVR, by postal mail or otherwise. I will notify E*TRADE Securities of any objection (including any claim of improper transfers, omissions, check alterations, forgeries, other errors or fraudulent occurrences) to the information contained in my Account statement (excluding securities transactions, which are covered by transaction confirmations as stated above) within five (5) days after my receipt of the statement. E*TRADE Securities is entitled to treat the information contained in the Account statement as accurate and conclusive unless I object within five (5) days of receipt. In all cases, E*TRADE Securities reserves the right to determine the validity of my objection to the information contained in the Account statement.

If E*TRADE Securities allows me to reflect positions that I hold at another broker-dealer or at a bank or other custodian (referred to as "positions held away") on my E*TRADE Securities Account statement, E*TRADE Securities will report these positions to me as a service based solely on information provided by me and/or my custodian. I agree, however, that E*TRADE Securities makes no representation whatsoever to me concerning the accuracy of this information and, in particular, the accuracy of the valuations reflected for these positions and my ability to liquidate them or obtain the stated values on liquidation. To the extent that any advice or results of any analytic tools that I use depend on information about positions held away, I agree that the advice or results will depend on the accuracy, timeliness and completeness of the information provided to E*TRADE Securities, for which I remain solely responsible.

**(d) Notices and Other Communications**
E*TRADE Securities will forward to me any and all notices and other communications relating to my Account, including privacy notices, prospectuses and, where required by applicable laws and regulations, any proxy materials, annual repots, notices of meetings and any other material furnished to E*TRADE Securities by issuers whose securities I own by sending such notices and other communications to the postal or electronic address I have specified. Such notices will be deemed to constitute good and effective delivery to me when sent by E*TRADE Securities whether or not actually or timely received or accessed, unless E*TRADE Securities receives actual notice to the contrary (by rejected e-mail delivery notice, returned mail from the U.S. Postal Service or the like). I am responsible for reading the notices posted to the electronic message box for my Account on the E*TRADE Securities Web site and for notifying E*TRADE Securities immediately of any change to the postal or electronic address specified. Notices and other communications may also be provided to me orally. Such notices left on an answering machine, or otherwise, will be deemed to have been delivered whether actually received or not. I waive all claims resulting from any failure to receive the notices and communications specified in this Section.

**(e) Monitoring Communication**
I understand and agree that E*TRADE Securities may in its discretion, but is not obligated to, monitor or record any of my telephone conversations with E*TRADE Securities for quality control purposes and for its own protection. E*TRADE Securities may also monitor and make a record of my use of the Service and any other communications between E*TRADE Securities and me and may use the resulting information for internal purposes or as may be required by applicable law. Unless otherwise agreed in writing, E*TRADE Securities does not consent to the recording of telephone conversations by any third party or me. I acknowledge and understand that not all telephone lines or calls are recorded by E*TRADE Securities, and E*TRADE Securities does not guarantee that recordings of any particular telephone calls will be retained or capable of being retrieved.

**(f) Information Made Available through the Service**
I understand that I am permitted to store, display, analyze, modify, reformat and print the information made available to me through the Service only for my own use. I will not publish, transmit, or otherwise reproduce this information, in whole or in part, in any format to any third party without the express written consent of E*TRADE Securities. I will not alter, obscure or remove any copyright, trademark or any other notices that are provided to me in connection with the information. I represent and warrant that: (i) I will not use the Service in contravention of this Agreement, (ii) I will use the Service only for the benefit of my Account and not on behalf of any other person, and (iii) with the exception of a web browser and other applications specifically approved by E*TRADE Securities in writing, I agree not to use (or allow another person to use) any software, program, application or other device, directly or indirectly, to access or obtain information through the Service or to automate the process of accessing or obtaining such information.

**(g) Nondisclosure of Material, Nonpublic Information**
In connection with the brokerage and other services that it provides, E*TRADE Securities may, from time to time, come into possession of confidential and material, nonpublic information. E*TRADE Securities is prohibited from improperly disclosing or using such information for its own benefit or for the benefit of any other person, regardless of whether such other person is a customer of E*TRADE Securities. E*TRADE Securities maintains and enforces written policies and procedures that prohibit the communication of such information to persons who do not have a legitimate need to know the information and to assure that it is meeting its obligations to customers and remains in compliance with applicable law. I understand and agree that these policies and procedures are necessary and appropriate and recognize that, in certain circumstances, E*TRADE Securities will have knowledge of certain confidential or material, nonpublic information which, if disclosed, might affect my decision to buy, sell or hold a security, but that E*TRADE Securities will be prohibited from communicating such information to me or using it for my benefit.

Back to top

**6. TRADING PROVISIONS**

**(a) Responsibility for Orders**
All orders for the purchase and sale of Securities and/or Other Property given for my Account will be authorized by me and executed in reliance on my promise that an actual purchase or sale is intended. It is my intention and obligation to deliver Securities and/or Other Property to cover long positions and to pay for purchase transactions immediately on E*TRADE Securities' demand. In the case of a sale of Securities and/or Other Property, E*TRADE Securities is authorized to borrow or otherwise obtain the Securities and/or Other Property as necessary to enable E*TRADE Securities to make delivery, and I agree to be responsible for any Losses E*TRADE Securities may incur in doing so. I understand E*TRADE Securities may anytime, at its sole discretion and without prior notice to me, prohibit or restrict my ability to trade securities. I further agree not to allow any person to trade for my Account unless a trading authorization for that person has been received and approved by E*TRADE Securities.

**(b) Applicable Rules and Regulations**
All transactions in my Account will be subject to the constitution, rules, regulations, customs and usages of the exchange or market, and its

clearinghouse if any, where such transactions are executed by E*TRADE Securities or its agents, as well as E*TRADE Securities' house trading rules and policies. Where applicable, such transactions will be subject to the provisions of the Securities Act of 1933, the Securities Exchange Act of 1934, and the rules and regulations of the Securities and Exchange Commission, the Board of Governors of the Federal Reserve System and any applicable self-regulatory organization. In no event will E*TRADE Securities be obligated to effect any transaction it believes would violate any federal or state law, rule or regulation or the rules or regulations of any regulatory or self-regulatory body.

**(c) SIPC and Other Insurance Coverage**
E*TRADE Securities is a member of the Securities Investor Protection Corporation ("SIPC"). The SIPC currently protects the Securities and/or Other Property in each of my Accounts up to $500,000, including $100,000 for claims for cash. (Please note that money market fund balances are not considered cash for this purpose: they are considered to be securities.) E*TRADE Securities offers additional protection secured through an independent insurer. Account protection and coverage (either under SIPC or the additional insurance secured by E*TRADE Securities) does not cover fluctuations in the market value of my investments. Positions held away are not in the custody or control of E*TRADE Securities, nor are they covered by SIPC or the additional insurance secured by E*TRADE Securities.

**(d) Market Volatility, Market Orders and Limit Orders**
I understand that, whether I place a market or limit order, I will receive the price at which my order is executed in the marketplace. Particularly during periods of high volume, illiquidity, fast movement or volatility in the marketplace, the execution price received may differ from the quote provided on entry of an order, and I may receive partial executions of an order at different prices. I understand that E*TRADE Securities is not liable for any such price fluctuations. I also understand that price quotes generally are for only a small number of shares as specified by the marketplace, and larger orders are relatively more likely to receive executions at prices that vary from the quotes or in multiple lots at different prices.

Securities may open for trading at prices substantially higher or lower than the previous closing price or the anticipated price. If I place a market order (whether during normal market hours or when the market is closed), I agree to pay or receive the prevailing market price at the time my market order is executed. I understand that the price I pay may be significantly higher or lower than anticipated at the time I placed the order. To avoid buying a security at a higher price and possibly exceeding my purchasing power, or selling it at a lower price than I desire, I understand my option to enter a limit order. I also understand that limit orders may not be executed at any particular time, or at all if there is not sufficient trading at or better than the limit price I specify. The E*TRADE Securities Web site contains further information regarding orders types and limitations, which I agree to read and understand before placing such orders.

**(e) Bulletin Board/Pink Sheet Stocks**
Bulletin board, pink sheet and other thinly-traded securities ("bulletin board stocks") present particular trading risks, in part because they are relatively less liquid and more volatile than actively traded securities listed on a major exchange. I understand that bulletin board stocks may be subject to different trading rules and systems than other securities and that I may encounter significant delays in executions, reports of executions and updating of quotations in trading bulletin board stocks. E*TRADE Securities in its sole discretion may require limit orders on certain bulletin board stock transactions. The Market Data supplied by E*TRADE Securities regarding bulletin board stocks is updated from time to time, but may not be current at any given point in time.

**(f) Order Handling**
I understand that, subject to the terms of an order, the method of execution of each order is in the sole discretion of E*TRADE Securities. If I do not specifically request that my orders be routed to a particular market venue to which E*TRADE Securities has access, orders that are accepted by E*TRADE Securities will be transmitted to the appropriate exchange or other market for placement and execution. Certain orders, at E*TRADE Securities' sole discretion, may be subject to manual review and entry, which may cause delays in the execution of my orders and may cause my orders to be executed at prices that are significantly different from the price quotes I obtained when I entered my order. E*TRADE Securities reserves the right in its sole discretion to decline to accept any order or to change its requirements with respect to stop or stop-limit orders for particular securities or classes of securities without advance notice. I authorize E*TRADE Securities to submit my orders jointly with other orders for other customers and I acknowledge that the average price for executions resulting from bunched orders will be assigned to my Account. On request, E*TRADE Securities will make available the underlying records reflecting the actual transaction prices.

**(g) Purchases**
I promise to pay for all securities purchased in my Account by addition of the appropriate cash amount on or before Settlement Date. Except for conditional offers for the purchase of new issues, E*TRADE Securities reserves the right to require that my Account contain Available Funds in an amount equal to or greater than the purchase price of the securities prior to the trade date. I am responsible for my orders, including any order that may exceed my Available Funds, and I will not rely on E*TRADE Securities to reject orders that exceed my purchasing power. If full funds are not available in the Account and my order is processed, I must promptly deliver payment to E*TRADE Securities for receipt on or before the Settlement Date. If payment is not received by Settlement Date, or as market conditions warrant anytime before or after settlement, E*TRADE Securities may in its sole discretion liquidate and close out any and all Securities and/or Other Property in my Account to satisfy my payment obligation, without prior notice and without regard for any previous demand or agreement concerning the time for payment. In the event my Account is liquidated, I will be liable for any Losses incurred by E*TRADE Securities.

**(h) Sales and Short Sales**
I promise to deliver all securities sold in my Account and to provide collateral of a type and amount acceptable to E*TRADE Securities for all short sales in my Account. E*TRADE Securities generally requires that a security be held in an Account prior to the acceptance of a sell order with respect to such security unless the order is specifically designated as a "short sale." If a security is not held in my Account and a sell order is processed, I must promptly deliver such securities to E*TRADE Securities for receipt in good deliverable form on or before the Settlement Date. Any order accepted without negotiable certificates or positions in the Account will be subject, at E*TRADE Securities' sole discretion, to cancellation or buy-in. To help ensure this will not occur, I agree that, unless I specifically designate the order as a "short sale," I will place sell orders only for securities owned by me and held in my E*TRADE Securities Account at the time my order is placed.

Proceeds of a sale will not be paid to me or released into my Account until E*TRADE Securities has received the securities in good deliverable form, whether from a transfer agent or from me and the settlement of the securities is complete. Instructions on how to properly endorse a certificate and deliver it to E*TRADE Securities are located on the E*TRADE Securities Web site. If the securities are not received on or before Settlement Date, or as market conditions warrant, E*TRADE Securities may in its sole discretion purchase the securities on the open market for my Account and may liquidate and close out any and all Securities and/or Other Property in my Account in order to pay for such purchase. In the event securities are bought in, I will be responsible for all resulting Losses incurred by E*TRADE Securities.

In order to prevent unintended short sales, once a sell order is placed with respect to a security position in my Account, E*TRADE Securities generally will not allow placement of another sell order with respect to that same position until the first order is either executed or confirmed to have been cancelled.

I promise that any order to sell "short" will be designated as such by me, and E*TRADE Securities will mark the order as "short" at the time the order is placed. In order to complete a short sale and maintain a short position, E*TRADE Securities must be able to borrow the security, which I do not own. If E*TRADE Securities is or subsequently becomes unable to borrow the security that I have sold short, I will be subject to a "buy-in," meaning that E*TRADE Securities may repurchase the security on the open market to cover the short position, and I will be liable for any resulting Losses. I also understand that I may execute short sales only in a Margin Account (see "Margin Account" for more information) and that such execution must comply with applicable short sales rules.

**(i) Free-Riding**
Free-riding violates Regulation T of the Federal Reserve Board and may violate other state or federal securities laws and rules. I will not engage in any free-riding transactions in my Account. If I am found to have engaged in free-riding, regardless of whether the activity resulted in a profit, my Accounts may be restricted or closed. I will be responsible for any Losses arising out of or relating to any free-riding transactions in my Account, but I will not be entitled to retain any profit from free-riding transactions. If I am found to have been free-riding in a transaction that generated a profit, that profit will, to the extent permitted by law, be forfeited to E*TRADE Securities. If I lose money in free-riding transactions that create a Debit Balance, I will be responsible for repaying that Debit Balance.

**(j) Cancellation Requests, Order Changes, Late and Corrected Reports**
A cancel instruction is only a request and, as such, cancellation of my order is not guaranteed. E*TRADE Securities processes requests to cancel on a best efforts basis and is not liable to me if it is unable to change or cancel an order. My order will be canceled only if my cancellation request is received in the marketplace and matched up with the existing order before the order is executed. The ability to cancel an order depends in large part on the volume of trading in the particular security and marketplace and market conditions as a whole, over which E*TRADE Securities has no control. Market orders are subject to immediate execution and, as a general rule, cannot be cancelled during market hours. Market orders and marketable limit orders placed prior to market open are subject to immediate execution at the opening and cancellation requests placed shortly before trading begins may not be capable of being effected. If an order cannot be canceled or changed, I agree that I will be bound by the results of the original order I placed.

I will not assume that an order has been executed, changed or cancelled until I have received a transaction status report from E*TRADE Securities specifically indicating that the order has been executed, changed or cancelled. From time to time E*TRADE Securities receives delayed reports of order executions, changes and/or cancellation request status from exchanges or market participants reporting the status of transactions. I will be subject to late reports of executions related to orders that were previously unreported to me or reported to me as being expired, cancelled or executed. In addition, any reporting or posting errors, including errors in execution prices, will be corrected to reflect what actually occurred in the marketplace.

I am responsible for knowing the status of my pending orders before entering additional orders. Any duplication by me of a pending order will be considered authorized and intended by me, even if the execution of the order exceeds my Available Funds or purchasing power. If I want to change an existing order, I agree to enter a change order. If I enter a cancellation request, I agree to wait for a transaction status report specifically indicating that my cancellation request has been effected prior to entering a replacement order. By entering a change order, I can avoid the requirement of waiting for such transaction status report. Repeated, successive change orders, particularly when an order is partially executed, may under some circumstances result in reporting delays and/or inaccuracies in initial transaction status reports. I will rely on official transaction confirmations as the official records of transactions in my Account, and I agree to contact E*TRADE Securities in the event I am unclear as to the status of an order.

**(k) Order Routing**
Consistent with the overriding principle of best execution, E*TRADE Securities, using a computerized system routes orders for listed and over-the-counter equity securities and options to market centers, including regional exchanges, securities dealers who make markets over-the-counter and alternative trading systems. E*TRADE Securities takes a number of factors into consideration in determining where to route customers' orders, including, the speed of execution, price improvement opportunities (executions at prices superior to the then prevailing inside market), automatic execution guarantees, the availability of efficient and reliable order handling systems, the level of service provided, the cost of executing orders, whether it will receive cash or non-cash payments for routing order flow and reciprocal business arrangements. E*TRADE Securities regularly and rigorously reviews transactions, broker-dealers and other market centers for execution quality based on the foregoing factors. Pursuant to Rule 11Ac1-6 of the Securities Exchange Act of 1934, quarterly reports that disclose the market venues receiving E*TRADE Securities order flow in covered securities, as well as the material aspects of each relationship, will be made available on the E*TRADE Securities Web site.

**(l) Payment for Order Flow**
E*TRADE Securities receives remuneration (generally in the form of per-share cash payments or through profit sharing arrangements) for directing orders in securities to particular broker-dealers and market centers for execution. I understand that this remuneration, known as "payment for order flow," is considered compensation to E*TRADE Securities and the source and amount of any compensation received by E*TRADE Securities in connection with my transaction will be disclosed on written request. E*TRADE Financial Corporation has a financial interest in Archipelago Holdings, Inc. (owner and operator of the Archipelago Exchange (ArcaEx)), the International Securities Exchange, Inc., ISE Stock Exchange, LLC, and CHX Holdings, Inc. (owner and operator of the Chicago Stock Exchange), and may route orders to those entities. E*TRADE Securities also may route orders to and receive payment for order flow from E*TRADE Capital Markets, LLC, which is a wholly-owned subsidiary of E*TRADE Financial Corporation.

**(m) No Recommendation of Day Trading**
By providing the means to place trades electronically, E*TRADE Securities does not recommend or endorse what is commonly referred to as "day trading," that is, the practice of purchasing and selling (or selling and purchasing) the same security within one day's trading. I understand that engaging in the practice of day trading is extremely risky and is not appropriate for customers with limited resources, limited investment or trading experience or a low risk tolerance. Additional information about day trading and the associated margin requirements is available on the E*TRADE Securities Web site.

**(n) E*TRADE Securities as Agent; Affiliates**
I understand that E*TRADE Securities is acting as my agent unless E*TRADE Securities notifies me in writing before the Settlement Date for a transaction that it is acting as a dealer for its own Account or as agent for another person. I agree that E*TRADE Securities may provide certain brokerage or other services to me with or through its affiliates. I also understand and agree that, in the event an order is executed with an affiliate acting as principal, such affiliate may receive a profit (or loss) in connection with such execution in addition to any commission, commission equivalent, mark-up or fee paid to E*TRADE Securities. If I am not a U.S. resident, I understand that I am dealing with or through an E*TRADE Securities affiliate authorized to conduct business in the jurisdiction in which I reside. Neither anything contained in this Agreement nor any information made available

through the Service is to be construed as an offer to buy or sell, or the solicitation of an offer to buy or sell, any security, financial product or instrument or to participate in any particular trading strategy in any jurisdiction in which such offer, solicitation or trading strategy would be unlawful.

**(o) Disclosures to Issuers**
E*TRADE Securities is required to disclose to an issuer the name, address and position of each customer who is a beneficial owner of that issuer's securities unless I object. This is done to comply with Rule 14b-1(c) under the Securities Exchange Act of 1934. Unless I notify E*TRADE Securities of such objection in writing, E*TRADE Securities will make such disclosures to issuers.

**(p) Reorganizations and Corporate Actions**
Certain securities may impart valuable rights that expire unless the holder takes some action. I understand that I am responsible for knowing the rights and terms of all securities in my Account. E*TRADE Securities will not be obligated to notify me of any upcoming expiration or redemption dates, or to take any other action on my behalf without specific instructions from me, except as required by law and applicable rules of regulatory authorities. However, if any such security is about to expire, become worthless or be redeemed for significantly less than its fair market value, and I have not provided instructions to E*TRADE Securities, E*TRADE Securities may, at its discretion, take action on my behalf and credit my Account with the proceeds. Although E*TRADE Securities has the discretion to take such action, E*TRADE Securities is not obligated to do so. I agree not to hold E*TRADE Securities liable for any Losses arising out of or relating to my failure to act or to give instructions to E*TRADE Securities to act on my behalf.

I am responsible for knowing about voluntary and mandatory reorganizations related to securities that I hold, including mergers, name changes, stock splits and reverse stock splits. E*TRADE Securities is not obligated to notify me of any such reorganizations before they occur. I understand that E*TRADE Securities will not allocate securities or funds resulting from reorganizations until such securities or funds are received by E*TRADE Securities from the paying agent or depository. On voluntary reorganization instructions (tender or exchange offers), I agree to provide instructions to E*TRADE Securities' Corporate Actions Department no later than two (2) Business Days prior to the expiration of the offer to allow sufficient time to act on my instructions. Any instructions received after that time will be processed on a "reasonable efforts" basis only. Additionally, I am solely responsible for also knowing about periodic payment activities including cash, stock and optional dividends. E*TRADE Securities is not obligated to notify me of any such activities.

I am responsible for knowing when a reorganization, such as a stock split, has changed the symbol and/or the number of shares represented by an option contract. If I trade options during a tender offer, merger or other pending reorganization, I must exercise particular care to ensure that I understand the price of contracts and the number of shares per contract. If, due to a reorganization, I sell shares of a security than I own, if I become uncovered on an options position or if I become otherwise exposed to risk requiring E*TRADE Securities to take market action in my Account, I will be responsible for any Losses incurred. Overselling in a Cash or Margin Account is an impermissible short sale and may result in my Account being restricted. See "Sales and Short Sales" for more information.

**(q) Dividends, Interest and Subscription Rights**
E*TRADE Securities will receive periodic payments, such as dividends and interests, on my behalf, and will credit my Account on or shortly after the payable dates. Foreign dividends and interest will be credited to my Account on or shortly after the funds are converted to U.S. currency.

**(r) Impartial Lottery Allocation System**
When E*TRADE Securities holds on my behalf, bonds or preferred stocks in street or bearer form which are callable, I agree to participate in an impartial lottery allocation system. I also understand that when the call is favorable, no allocation will be made to any account in which E*TRADE Securities, its affiliates, directors, officers or employees, have a financial interest until all other customer positions in such securities are satisfied on an impartial lottery basis.

**(s) "Control" or "Restricted" Securities**
I am responsible for knowing when a security is deemed a Restricted Security. It is my obligation to notify E*TRADE Securities of any and all restrictions, including restrictions imposed by the issuer, the issuer's counsel or any other third party. Prior to placing an order in connection with the sale or transfer of Restricted Securities, I must advise E*TRADE Securities of the status of the securities. I agree to furnish E*TRADE Securities with the necessary documents (including opinions of legal counsel, if requested) to clear legal transfer. I am responsible for all costs associated with processing the security, including the cost to repurchase stock, if I sell stock that is later found to be nontransferable. As such, E*TRADE Securities, at its sole discretion, may require that such securities not be sold or transferred until they first clear legal transfer. I also acknowledge and agree that I am responsible for all reporting obligations with regard to the sale of control or restricted securities, including the filing of Forms 144, 3, 4 and 5. Restricted Securities may not be purchased on margin.

I also understand that proceeds from the sale of control of restricted securities may not be made available to me for withdrawal or reinvestment purposes until E*TRADE Securities receives the non-restricted shares back from the Transfer Agent. Even if the necessary documents are furnished in a timely manner, there may be delays with the processing of such securities. I further agree that E*TRADE Securities will not be held liable for delays in the sale or settlement of such securities or the release of proceeds from such sale resulting from the failure of issuer's counsel to provide or to approve any necessary legal opinion, or any delays from the Transfer Agent.

**(t) Trading in Non-U.S. Markets**
I understand that investing outside the United States involves additional risks related to currency fluctuations, economic and political differences and differences in accounting standards. I agree that, in order to trade in non-U.S. markets, I first must either: (1) convert U.S. dollars held in my Account to the applicable currency of the non-U.S. market in which I wish to trade; or (2) transfer into my account the applicable non-U.S. currency. Currency exchanges are effected by affiliates of E*TRADE Securities on a principal basis, and may include a mark-up or mark-down, as appropriate. I understand that more favorable exchange rates may be available through third parties not affiliated with E*TRADE Securities. I further understand that foreign currency transactions are not regulated or overseen by the SEC or the Commodities Futures Trading Commission, or any of the securities or commodities self-regulatory organizations. Securities transactions executed on non-U.S. exchanges will be effected by one or more affiliates of E*TRADE Securities, which may be compensated for their services.

*Back to top*

**7. TRADING SYSTEM**

I understand that E*TRADE Securities does not guarantee that all or any of the access routes will be available to me all the time. E*TRADE Securities reserves the right to suspend access to the Service without prior notice during scheduled or unscheduled system repairs or upgrades.

**(a) Alternative Means of Access**

E*TRADE Securities offers a variety of ways of accessing my Account, including telephone, online and IVR services. I agree that if I experience any difficulties accessing the Service through any Access Device, particularly during periods of heavy trading and volatile market conditions, I will attempt to use alternate methods to access E*TRADE Securities. E*TRADE Securities, however, will not accept orders or instructions by e-mail, facsimile or postal mail (including U.S. mail or overnight delivery). Further information regarding submitting orders is located in the Help Center.

**(b) Customer Responsibility**

I understand that I am responsible for all acts and omissions relating to the use of the Service, including all orders entered through the Service using my User ID and Passwords. I understand and agree that it is my responsibility to maintain the confidentiality of my User ID and Passwords and to change my Passwords regularly and to keep them confidential. I agree to notify E*TRADE Securities immediately if: (i) an order is placed through the Service and I do not receive an order number; (ii) an order is placed through the Service and I do not receive an accurate acknowledgment of the order or of its execution; (iii) I receive acknowledgement of an execution of an order which I believe I did not place; or (iv) I become aware of any unauthorized use of my User ID and Passwords.

If I fail to notify E*TRADE Securities as soon as practicable when any if the above conditions occur, neither E*TRADE Securities nor any of its affiliates will be liable to me or to any other person for any claim with respect to the handling, mishandling or loss of any order.

**(c) Security**

When I access the E*TRADE Securities Web site using the appropriate version of the following third-party browsers: Netscape Communicator, Navigator, Microsoft Internet Explorer and America Online, E*TRADE Securities' security system automatically protects my communications through server authentication and data encryption. Access requires password protection to log onto the trading site and to actually place a trade.

**(d) Market Data**

I understand that neither E*TRADE Securities nor any participating Data Provider guarantees or makes any warranty of any kind, expressed or implied, regarding the timeliness, sequence, accuracy or completeness of Market Data. I agree that E*TRADE Securities is not liable for any Losses (including lost opportunity or profits) arising out of or relating to: (i) any inaccuracy, defect or omission of the data; (ii) any error or delay in the transmission of such data; or (iii) interruption in any such data due to any cause beyond the control of E*TRADE Securities.

I also understand that each Data Provider asserts a proprietary interest in all of the Market Data it furnishes to the parties that disseminate the data. I will use Market Data (including Real Time Quotes) only for my individual non-business use. I will not provide Market Data to any person or entity. I understand that the Data Providers may enforce the terms of this Agreement directly against me.

Back to top

## 8. ARBITRATION AGREEMENT AND DISCLOSURES

**(A). This agreement contains a predispute arbitration clause. By signing an arbitration agreement the parties agree as follows:**

1. **All parties to this agreement are giving up the right to sue each other in court, including the right to trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.**
2. **Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration is very limited.**
3. **The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.**
4. **The arbitrators do not have to explain their reason(s) for their award.**
5. **The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.**
6. **The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.**
7. **The rules of the arbitration forum in which the claim is filed, and any amendments thereto shall be incorporated into this agreement.**

**(B). I agree to resolve by binding arbitration any controversy that may arise between E*TRADE Securities or its affiliates and me relating in any way to my relationship with E*TRADE Securities, any Account held with E*TRADE Securities, or any service provided by E*TRADE Securities to me. This arbitration agreement includes any controversy involving transactions of any kind made on my behalf by or through E*TRADE Securities, or (b) the performance, construction or breach of this Agreement or any other written agreement between E*TRADE Securities and me. Such arbitration will be conducted in accordance with the rules then in effect of the NASD unless the rules of another self-regulatory organization to which E*TRADE Securities is subject mandate arbitration before that organization, in which case the arbitration will be conducted in accordance with the rules then in effect of that organization. Any dispute or claim involving a dollar amount in excess of $50,000 will be before a panel of at least three arbitrators. I make this arbitration agreement on behalf of myself and my heirs, administrators, representatives, executors, successors, assigns and together with all other persons claiming a legal or beneficial interest in my Account.**

**Any award of the arbitrator or a majority of the arbitrators will be final and binding, and judgment on such award may be entered in any court having jurisdiction. This arbitration provision will be enforced and interpreted exclusively in accordance with applicable federal laws of the United States, including the Federal Arbitration Act. Any costs, attorneys' fees or taxes involved in confirming or enforcing the award will be fully assessed against and paid by the party resisting confirmation or enforcement of said award.**

**(C). No person will bring a putative or certified class action to arbitration nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until:**

1. **the class certification is denied;**
2. **the class is decertified; or**
3. **the customer is excluded from the class by the court.**

Such forbearance to enforce an agreement to arbitrate will not constitute a waiver of any rights under this Agreement except to the extent stated herein.

(D). If I am not residing in the United States at the time of a controversy arises between E*TRADE Securities and me, I agree to the provisions described above and the following additional provisions:

1. I agree that any arbitration hearing will be held in San Francisco, California unless otherwise agreed between E*TRADE Securities and me or unless the NASD (or other self-regulatory organization administering the arbitration) designates another hearing location;
2. I agree to the personal jurisdiction of the courts of the State of California, U.S.A, to interpret and enforce these arbitration provisions described in the Agreement; and
3. All arbitrations will be held in the English language, unless otherwise agreed to by the parties.

Back to top

## 9. MARGIN ACCOUNTS

I understand that when I trade on margin, I am borrowing money or securities from E*TRADE Securities. I also understand that while trading on margin may present a greater opportunity for profit, it also presents a higher degree of risk. I agree to carefully consider whether trading on margin is suitable for me in light of my financial resources, objectives and other relevant circumstances. As noted above, I understand that unless I specify otherwise E*TRADE Securities will treat my Account Application as a request to open a Margin Account.

A Margin Account allows me to borrow money or securities from E*TRADE Securities using acceptable securities or cash as collateral for the loan on the terms contained in this Agreement and in accordance with all applicable laws and regulations including, the rules of the Securities and Exchange Commission, applicable exchange, NASD and the Federal Reserve Board. Only certain securities, as specified by the Federal Reserve Board and/or E*TRADE Securities, may be purchased on margin or used as collateral in my Account. How much of the purchase price must be in my Account at the time I place my order and my margin maintenance requirements are determined by the Federal Reserve Board, by applicable exchange or NASD rules and by E*TRADE Securities. For E*TRADE Securities' protection, E*TRADE Securities reserves the right, anytime and without prior notice to me, to impose stricter requirements than those imposed by the Federal Reserve Board or applicable exchange or NASD rules, or to refuse to permit trading on margin. E*TRADE Securities' margin terms, policies and procedures are subject to change without notice.

E*TRADE Securities does not permit me to purchase on margin or provide as margin, collateral securities with a value of less than $3 per share. Once a security is purchased on margin, if the value of the security falls below $2 per share, I will generally not be permitted to use that security as collateral. E*TRADE Securities also retains the right to refuse anytime to offer credit on certain securities due to concentration, price, market volatility or other conditions. All margin loans are fully callable without notice. By entering into this Agreement, I acknowledge receipt of the E*TRADE Securities Margin Disclosure Document, which contains more information about the risks associated with margin trading.

I may be required to provide a minimum amount to open a Margin Account. Generally, E*TRADE Securities requires that I have at least $2,000 ($25,000 in the case of pattern day traders) in equity in my Account, or such higher amount as required by E*TRADE Securities or applicable rules and regulations, before it will extend credit to me. Generally, for opening transactions, E*TRADE Securities can loan me no more than 50% of the purchase price of the security I am buying, as set forth in Regulation T of the Federal Reserve Board. This initial equity requirement, as well as the maintenance requirement, may be raised any time without prior notice to me. On application for and approval of my Margin Account, and per my instructions, E*TRADE Securities will act as my broker to purchase or sell securities on margin. I agree to maintain in all Margin Accounts with E*TRADE Securities, such positions and margin as required by all applicable laws, rules, regulations, procedures and customs or as E*TRADE Securities deems necessary and advisable. I agree to immediately satisfy all margin and maintenance calls.

### (a) Collateral; Liquidations and Covering Positions
E*TRADE Securities may require me to provide additional collateral and/or may liquidate positions in my Account for any of the following reasons:

1. if the value of my account equity falls or if the initial equity requirement is raised;
2. if I fail to promptly meet any call for additional collateral;
3. if I indicate to E*TRADE Securities that I do not intend to meet a call for additional collateral;
4. if I file a petition in bankruptcy or if such a petition is filed against me;
5. if I seek or acquiesce to the appointment of a receiver;
6. if an attachment is levied against any of my Accounts or any Accounts in which I have an interest;
7. if I die; or
8. any other circumstances which in E*TRADE Securities' opinion warrants such actions.

E*TRADE Securities is not obligated to notify me when a call is due and can liquidate or buy any security to cover positions anytime without demand for additional funds, even if I have notified E*TRADE Securities that I will be providing additional collateral for my Account. E*TRADE Securities can liquidate any and all Securities and/or Other Property in my Account whether carried individually or jointly with others. E*TRADE Securities can buy and sell securities or other property that may be short in such Accounts, or cancel any open orders. Any prior demand or notice will not be deemed a waiver of E*TRADE Securities' right to take these actions. I understand that, in all cases, I will remain liable for any Losses in my Account.

### (b) Loan or Pledge of Securities
I authorize E*TRADE Securities to lend either to itself or to others any Securities and/or Other Property held by E*TRADE Securities in my Margin Account to the extent permitted by law. I understand that within the limitations imposed by applicable laws, rules and regulations all of my securities and other property may be pledged and repledged and hypothecated and rehypothecated by E*TRADE Securities. This can occur without my being notified, either separately or together with other Securities and/or Other Property of other customers of E*TRADE Securities, for any amount due E*TRADE Securities in any Account in which I have an interest. In certain circumstances, I may not be able to exercise voting rights of the securities that are lent by me. In addition, if any Securities in my Margin Account are lent out past the ex-dividend date, I understand that I will receive a payment in lieu of the dividend (also known as a substitute payment) from E*TRADE Securities, instead of the actual dividend. Payments in lieu of dividends are reported as ordinary income, which would cause customers with taxable accounts to lose the benefit of preferential tax rates on qualified dividend income under U.S. tax laws. I understand that E*TRADE Securities does not offer tax advice and that I will consult with my tax advisor as necessary.

**(c) Short Sales**

Short sales may only be made in Margin Accounts and are subject to the initial margin and margin maintenance requirements set forth above. If a security is recalled by the lender of the security, E*TRADE Securities will attempt to re-borrow the securities. However, if E*TRADE Securities is unable to re-borrow the securities, E*TRADE Securities may cover my short position by purchasing the securities on the open market, at the then current market price, without notice. E*TRADE Securities may cover a short position, at its discretion, if E*TRADE Securities anticipates an inability to borrow or re-borrow the security.

**(d) Other Accounts; Municipal Securities**

In accordance with applicable regulations and E*TRADE Securities' policies, margin lending is not allowed in retirement or custodial accounts. I understand that there may be tax consequences associated with providing municipal securities to satisfy margin requirements or holding municipal securities in a retirement account and that I should consult with my tax advisor before doing so.

**(e) Interest Computation**

I will be charged interest on a daily basis on all credit extended to me. Interest is calculated by multiplying my average daily Debit Balance by the daily margin interest rate described in Section 9(f). My average daily Debit Balance is the sum of the daily Settlement Date Debit Balances in my Account during the calculation period divided by the number of days in such calculation period All interest charges are calculated on a 360-day basis using Settlement Date balances. I understand the use of a 360-day year results in a higher effective rate of interest than if a year of 365 days were used.

My daily Debit Balance is calculated by adjusting my previous day's Debit Balance by the debits and credits associated with the Account for the current day. My daily Debit Balance is further adjusted on a weekly basis by any change in the value of any short positions ("mark-to-market") for the preceding week. Any increase in the market value of short securities will be treated as a debit, and will be added to my Debit Balance. A Debit Balance due to a trade settling in a Cash Account will increase the amount of margin interest charged. Dividends and interest will be credited to the Account and will be considered part of a Cash Balance when calculating interest (unless I have a different Sweep Option, in which case dividends and interest will be credited to such Sweep Option account). If my daily Debit Balance is reduced because a check or other item provided by me is later returned to E*TRADE Securities unpaid, E*TRADE Securities may adjust my Account to reflect interest charges I may have incurred.

Interest is generally calculated on a monthly basis (using the method described above), from the last Business Day of the prior month through the second to last Business Day of the current month. Interest is generally posted on the last Business Day of each month. Settlement Date Debit Balances and Cash Balances in the Cash Account will be applied to the Margin Account balance for calculation purposes if the Margin Account has a Debit Balance. E*TRADE Securities reserves the right to charge interest on Debit Balances in a Cash Account. I understand that interest will accrue to my Account each day. The interest rates described in Section 9(f) below do not reflect compounding of unpaid interest charges; the effective interest rate, taking into effect such compounding, will be higher. Rate.

**(f) Margin Interest Rates.**

The interest rate for margin loans is based on the E*TRADE Securities Base Rate. If I am either a citizen or resident of the United States, my margin interest rate will be based on the following:

| Average Debit Balance: | Margin Interest Rate Charged: |
|---|---|
| Less than $50,000 | 3% above Base Rate |
| $50,000 - $249,999 | 2% above Base Rate |
| $250,000 - 999,999 | 1% above Base Rate |
| $1 Million or more | Base Rate |

If I am neither a citizen nor resident of the United States, my margin interest rate will be based on the following:

| Average Debit Balance: | Margin Interest Rate Charged: |
|---|---|
| Less than $50,000 | 3.5% above Base Rate |
| $50,000 - $249,999 | 2.5% above Base Rate |
| $250,000 - 999,999 | 1.5% above Base Rate |
| $1 Million or more | 0.5% above Base Rate |

The Base Rate is set with reference to commercially recognized interest rates, industry conditions relating to the extension of margin credit and general market conditions. The current margin interest rates can be found at etrade.com/marginrates for domestic customers and etrade.com/marginrates/international for international customers, and are also available by calling Customer Service at 1-800-ETRADE1 (1-800-387-2331) for domestic callers or 1-678-624-6210 for international callers. I understand that the Base Rate may be adjusted automatically and without notice to me. However, if my margin interest rate changes for any reason other than a change in the Base Rate, I will receive electronic notice within thirty (30) days prior to the change.

Prior to exercising my margin privileges, I acknowledge that I have carefully considered my financial condition, investment objectives and my tolerance for risk along with the provisions of this Agreement and the information in the margin disclosure document provided by E*TRADE Securities. Based on that review, I found my particular situation to be appropriate for trading on margin.

Back to top

8/29/2007 11:52

## 10. OPTIONS TRADING

I understand that options trading is highly speculative and contains a high degree of risk and that option trading is not suitable for all investors. I agree that prior to completing the "Options" section of an Account Application (or a separate E*TRADE Securities application for an Options Account) I will carefully review and consider my financial situation, risk tolerance and investment objectives. I will only apply for an Options Account if, based on that review, I am fully prepared financially to undertake such risks, withstand any and all Losses incurred, including total loss of premium, plus transaction costs. I understand that E*TRADE Securities reserves the right to terminate, restrict or reduce my options trading privileges if it determines that my trading activities or option positions present a risk to the firm.

### (a) OCC Disclosure, Applicable Rules and Regulations

I agree not to enter into any purchase or sale of equity, debt, foreign currency or index options without having read and fully understood the terms, conditions and risk of options trading set forth in the "Characteristics and Risks of Standardized Options" issued by The Options Clearing Corporation ("OCC") If this is an Options Account, then by entering into this Agreement I acknowledge receipt of the "Characteristics and Risks of Standardized Options" document and I also understand and agree that each option transaction is subject to the constitution, rules, regulations, customs and usages of the OCC, the exchange or market where such transaction is traded and the rules and regulations of the NASD and various state and federal regulatory and self-regulatory authorities.

I agree that, acting alone or in concert with others, I will not violate directly or indirectly, or contribute to the violation of, any position or exercise limits imposed by the OCC or any other regulatory authority having jurisdiction over any exchange or market on which options are traded.

### (b) Accuracy of Supplied Information

I represent that all information furnished to E*TRADE Securities in connection with the opening of my Options Account is complete and accurate. I agree to immediately advise E*TRADE Securities of any significant changes in my financial situation or investment objectives.

### (c) Margin Requirements and Option Trading

An option purchase cannot be margined. There are, however, special margin requirements (discussed in the OCC's disclosure document) governing the sales of options which I should familiarize myself with before entering into options transactions.

### (d) Customer Responsibilities, Assignments and Exercises

In order to process option orders, E*TRADE Securities generally requires that the Account contain Available Funds equal to or greater than the purchase price of the options. However, E*TRADE Securities may process orders to purchase options even if an Account does not contain sufficient Available Funds. I understand that I am responsible for my own orders, including any orders that may exceed Available Funds in my Account.

I agree that E*TRADE Securities will not be liable in connection with the market makers' execution, handling, purchasing, exercising and endorsing of options for my Account. If I fail to make payment or pay Debit Balances when due, E*TRADE Securities is authorized, in its sole discretion and without notice, to take any and all action necessary to protect itself in connection with option transactions for my Account. This includes the right to buy and/or sell (including short or short sale exempt) for my Account and risk any part or all of the shares represented by options held by E*TRADE Securities that it may deem necessary or appropriate.

E*TRADE Securities has no obligation to exercise any option absent specific instructions from me. E*TRADE Securities reserves the right to require full Available Funds in my Account to support the cost of the exercise prior to enabling me to exercise an option, and may reduce the number of options exercisable based on the Available Funds in my Account. Because option contracts are traded for a specified period of time and have no value after expiration, I must advise E*TRADE Securities if I wish to enter off-setting transactions to close out my position or to exercise the option prior to the expiration date. I understand and agree that my failure to do so may result in the option expiring worthless, even though it might have a monetary value on the expiration date.

If I have not provided any instruction to E*TRADE Securities in accordance with the prior paragraph and I own options that are about to expire "in the money," E*TRADE Securities may in its sole discretion and without notice to me, exercise the option. If such an exercise would require the purchase or sale of the underlying security for which I do not have sufficient funds or securities available, E*TRADE Securities may, in its sole discretion and without notice to me, enter offsetting transactions to close out my position. Although E*TRADE Securities has the discretion to take such action, E*TRADE Securities is not obligated to do so. If an exercise notice is assigned to my Account, I agree to release the underlying security to E*TRADE Securities in the case of a call. In the case of a put, I must have enough cash in my Account to meet applicable margin requirements.

### (e) Uncovered Options Sales

Unless I receive written authorization from E*TRADE Securities, I agree that I will not engage in transactions that are not permissible under the option level for which I am approved.

### (f) Uncovered Options Disclosure

There are special risks associated with uncovered options writing which expose the investor to potentially significant loss. Therefore, this type of strategy may not be suitable for all customers approved for options transactions.

1. The potential loss of uncovered call writing is unlimited. The writer of an uncovered call is in an extremely risky position and may incur large losses if the value of the underlying instrument increases above the exercise price.
2. As with writing uncovered calls, the risk of writing uncovered put options is substantial. The writer of an uncovered put option bears a risk of loss if the value of the underlying instrument declines below the exercise price. Such loss could be substantial if there is a significant decline in the value of the underlying instrument.
3. Uncovered options writing is thus suitable only for the knowledgeable investor who understands the risks, has the financial capacity and willingness to incur potentially substantial losses and has sufficient liquid assets to meet applicable margin requirements. In this regard, if the value of the underlying instrument moves against an uncovered writer's options position, the investor's broker may request significant additional margin payments. If an investor does not make such margin payments, the broker may liquidate stock or options positions in the investor's account without notice to the investor in accordance with the investor's margin agreement.
4. For combination writing, where the investor writes both a put and a call on the same underlying instrument, the potential risk is unlimited.
5. If a secondary market in options were to become unavailable, investors could not engage in closing transactions and an options writer would remain obligated until expiration or assignment.
6. The writer of an American-style option is subject to being assigned an exercise anytime after he has written the option until the option expires.

By contrast, the writer of a European-style option is subject to exercise assignment only during the exercise period.

7.   More information about uncovered options sales is available in the chapter entitled "Risks of Buying and Writing Options" contained in the "Characteristics and Risks of Standardized Options" document. This statement is not intended to enumerate all of the risks entailed in writing uncovered options.

**(g) Random Allocation Disclosure**
I understand that exercise assignment notices for option contracts are allocated among customer short option positions in accordance with a random allocation method and agree to be bound by E*TRADE Securities' allocation method. A more detailed description of E*TRADE Securities' random allocation method is available on request.

**(h) Other Accounts**
In accordance with applicable regulations and E*TRADE Securities policies, options trading in retirement or custodial accounts carry special provisions, and may be limited at E*TRADE Securities' discretion.

**(i) Option Agreement**
I release and agree to indemnify and hold E*TRADE Securities and its affiliates harmless from and against any Losses arising out of or relating to any action taken pursuant to the Option Account terms of this Agreement.

Back to top

---

## 11. MUTUAL FUND TRADING

I agree that when placing an order to purchase, sell, redeem or exchange a mutual fund, E*TRADE Securities' policies and procedures can and will govern mutual fund transactions, in addition to those described in a fund's prospectus. E*TRADE Securities' policies and procedures may be more or less beneficial to me. In addition, I understand that E*TRADE Securities' may have policies and procedures pertaining to minimum investment requirements, exchanges of fund shares, and dates for payment of accrued dividends that may vary from those applicable to direct fund shareholders. I may also be charged a redemption fee by E*TRADE Securities that is separate from any redemption fee charged by the fund on direct shareholders holding fund shares.

**(a) Orders and Settlements**
E*TRADE Securities will establish cut-off times for mutual funds that it makes available through the Service. Orders received by E*TRADE Securities before the cut-off will receive the net asset value ("NAV") calculated on that Business Day. Orders received by E*TRADE Securities after the cut-off will receive the NAV calculated on the next Business Day. E*TRADE Securities' cut-off time for submitting mutual fund orders may be earlier than the cut-off time set by the fund in its prospectus. It is my responsibility to verify with E*TRADE Securities the cut-off time by which I must place my order to receive that day's price. I understand that I should review my order confirmation screen closely, as it will display the day that my order will be submitted. In the event I place my order by phone, it is my responsibility to verify the day on which my order will be submitted to receive that day's price.

E*TRADE Securities and its affiliates have policies and procedures reasonably designed to prevent "late trading." Late trading refers to the practice of accepting and entering orders to buy and sell mutual fund shares after 4:00 pm Eastern Time, the time at which mutual funds typically calculate their NAV, while nonetheless providing the price based on the prior NAV already determined as of 4:00 pm Eastern Time. The amount of any purchases will be deducted from the Cash Balance in my Account. If the Cash Balance in my Account is not sufficient to cover the cost of the trade (and any applicable commissions), my order will be rejected. I cannot change or cancel my order once it has been accepted by E*TRADE Securities. Executed orders will be confirmed prior to Settlement Date and the Account will automatically update with shares or a cash credit. This generally occurs three (3) days following the execution.

Proceeds from the sale of shares of a mutual fund will not be available for reinvestment or withdrawal until the day after the trade settles. In addition, I cannot sell shares of a fund until the business day after the purchase settles. Mutual fund transactions typically settle "T+3," which means three (3) days after the trade date. I agree that I will wait at least this long to withdraw proceeds from a mutual fund sale or to sell a fund I purchased.

**(b) Fund Restrictions**
I may only purchase, sell, redeem and exchange shares of mutual funds that have entered into selling agreements with E*TRADE Securities. With respect to funds that have no selling agreement with E*TRADE Securities, I may only redeem mutual fund shares I own and may not be able to purchase additional shares or enter into new positions with that particular fund company. I understand that some funds require original written redemption instructions. E*TRADE Securities reserves the right to reject any orders to purchase mutual fund securities because such securities are not authorized for sale in my state or for any other reason.

I understand that fund companies may restrict the ability of their shareholders to engage in frequent purchases, redemptions and exchanges of fund shares (herein defined as "market timing"). I understand that E*TRADE Securities will fully cooperate with specific fund company requests intended to permit the fund company to monitor and/or restrict market timing, which may include a request to limit order size or revoke trading privileges in a particular fund or an entire fund family. I further understand that a fund company may reject an order, in its sole discretion, and for any reason. If an order is rejected by the fund, E*TRADE Securities will not attempt to place the order again on my behalf.

**(c) Prospectuses**
I understand that I should read the prospectus carefully before investing in a mutual fund. The prospectus contains important information about the investment objective and investment strategies, risks and expenses applicable to the fund. E*TRADE Securities does not guarantee or verify the accuracy or completeness of any mutual fund's prospectus, statement of additional information, report to shareholders or proxy solicitation materials.

**(d) E*TRADE Funds**
I understand that the E*TRADE Family of Funds are only available through E*TRADE Securities. In addition, E*TRADE Funds can only be held in my E*TRADE Securities Account and cannot be transferred to another broker-dealer. I authorize E*TRADE Securities to redeem shares of the E*TRADE Family of Funds held in my Account if I: (i) revoke my consent or am no longer able to receive Account Communications via electronic delivery; (ii) close my Account; or (iii) attempt to transfer shares of the E*TRADE Family of Funds to another brokerage account. E*TRADE Securities or its affiliates may receive compensation for providing services (such as investment advisory, administration, transfer agency, distribution and shareholder services) to the E*TRADE Family of Funds. No portion of these fees will reduce or offset the fees otherwise due to E*TRADE Securities in connection with the Account unless required by law.

**(e) Other Important Mutual Fund Information**
Before investing in mutual funds through E*TRADE Securities, please be aware of the following information:

1. E*TRADE Securities provides me with the ability to invest in hundreds of mutual funds. By making a mutual fund or mutual fund family available to me, however, E*TRADE Securities does not guarantee the appropriateness, fitness or suitability of any mutual fund and makes no recommendation of any kind.
2. E*TRADE Securities provides, for informational purposes only, data about various mutual funds published by independent third parties. While E*TRADE Securities believes that the data provided by these third parties is reliable, it has no independent basis to verify or contradict the accuracy or completeness of the information provided. No recommendation or endorsement by E*TRADE Securities as to any investment may be inferred from the data provided.
3. Performance data provided represents past performance. Past performance is not a guarantee of future results. Investment return and mutual fund share values fluctuate daily and when I redeem my shares my investment may be worth more or less than my original cost.
4. Money market funds are securities that may increase or decrease in value. They are not insured or guaranteed by the FDIC, any other government agency, E*TRADE Securities or E*TRADE Bank and there can be no assurance that such funds will be able to maintain a stable net asset value of $1 per share.
5. Some mutual funds I may purchase invest in international securities. International investing carries certain risks that can be different from the risks of U.S. investments. These risks can include political or economic instability, changing currency rates, foreign taxes, reduced liquidity (difficulty selling securities held by a fund) and different regulatory or financial accounting standards. I will carefully read the prospectus of any mutual fund involving international investing prior to making an investment.
6. Some funds impose a sales charge upon the purchase of their securities known as a "sales load." In other instances I may be able to purchase mutual fund shares without paying a sales load, although I may pay a "back-end load" on redemption of the shares. The money assessed from sales loads generally is used to help market the shares of a particular fund. E*TRADE Securities may receive all or part of a sales load in connection with my purchase or sale of a fund's shares.
7. Some funds impose a marketing fee, known as a "12b-1 fee." This fee is computed into a fund's overall expense ratio, and is used to help market the shares of that fund. E*TRADE Securities may receive 12b-1 fees in connection with your purchase of fund shares.
8. E*TRADE Securities may impose a transaction fee for the purchase, sale or redemption of shares of funds that do not impose a sales loads. Such fees are not reflected in a fund's performance data and are in addition to any other fund fees. If these fees were factored into the performance, the fund's results would be lower. I may be able to purchase or redeem shares directly with the fund without paying a transaction fee.
9. Not all funds are registered for sale in all states, and mutual funds may not be available for sale outside the United States. By making information about the funds generally available, E*TRADE Securities does not represent or guarantee that such funds are qualified or otherwise exempt from registration in the state where I reside or outside the United States.
10. A fund's management may waive all or a portion of the fees owed it by the fund. This would have the effect of increasing the fund's performance returns. If these fees were factored into calculating the fund's performance, the fund's performance returns would be lower. There is no guarantee that such fees will continue to be waived in the future. For more information about fee waivers, I will refer to the fund's prospectus.
11. As a mutual fund shareholder, I may receive taxable dividends and capital gains, even in a fund that purports to be "tax-exempt." Taxes on such items will affect the returns I realize from my mutual fund investment, and my after-tax investment returns will be lower than my pre-tax returns. E*TRADE Securities does not offer tax advice. I should consider the impact of taxes and if I have further questions, I should read the fund's prospectus and/or consult with a tax advisor.
12. Indexes are unmanaged and do not reflect the payment of advisory fees and other expenses associated with an investment in a mutual fund . I understand that I cannot invest directly in an index.

Back to top


## 12. OTHER PROVISIONS AND DISCLOSURE

**(a) After-Hours and Pre-Market Trading and Other Terms and Disclosures**
E*TRADE Securities from time to time will inform me of additional terms, conditions and disclosures relating to particular products or services, including the Service and after-hours or pre-market trading sessions. By entering into this Agreement, I agree to abide by all such terms and conditions and disclosures.

**(b) U.S. Economic Sanctions**
My Account may be subject to U.S. economic sanction and embargo laws. I represent that I have not been designated by the U.S. Department of Treasury's Office of Foreign Assets Control ("OFAC") as a Specially Designated National or blocked person, I have no reason to believe that I would be considered a blocked person by OFAC and I do not reside in a restricted country. I also represent that I am not employed by, acting as agent of, or partially owned or controlled by a government, a government-controlled entity or a government corporation. I understand that if my application is deemed to fall under OFAC guidelines, my Account may be declined or restricted from certain activity.

**(c) Interaction with Other Financial Institutions**
I acknowledge and agree to the extent that I maintain bank Accounts or other financial services or investment advisory relationships with affiliated or unaffiliated entities of E*TRADE Securities, that such relationships will be considered separate and apart from my Brokerage Account with E*TRADE Securities.

**(d) E*TRADE Bank**
I understand that E*TRADE Securities is a separate entity from E*TRADE Bank. The products available through E*TRADE Securities are investment products and as such: (i) are not insured by the Federal Deposit Insurance Corporation ("FDIC"); (ii) carry no bank or government guarantees; and (iii) have associated risks. I understand that by investing in securities, I can lose money, including my principal investment.

**(e) Modification of Agreement or Service**
I understand that E*TRADE Securities may change any of the terms and conditions of this Agreement and/or eliminate any term or condition anytime. E*TRADE Securities reserves the right, but does not intend to follow it as a matter of course, to notify me of modifications to the Agreement by mailing or e-mailing a written notice or new Agreement to me. I understand that the normal method of notifying me of modifications to the Agreement will be to post the information on the E*TRADE Securities Web site. I also agree that E*TRADE Securities may change its Service anytime and that it is not obligated to provide me with notice of such a change.

I agree that use of the Service after a change to the Service or notice of a change to this Agreement, or if I do not close my Account within fifteen (15) calendar days of the change to the Service or notice of a change to the Agreement, means that I accept the change, whether or not I actually know of it, except that changes required by law will be effective immediately.

**(f) Severability, Waiver and Effectiveness**
If any provision of this Agreement is held to be invalid, void or unenforceable by reason of any law, rule, administrative order or judicial decision, that determination will not affect the validity of the remaining provisions of this Agreement. Except as specifically permitted in this Agreement, no provision of the Agreement can be, nor will it be deemed to be, waived, altered, modified or amended unless agreed to in writing signed by an authorized officer of E*TRADE Securities.

**(g) Non-Waiver**
E*TRADE Securities' failure to insist on strict compliance with this Agreement or any other course of conduct on its part will not be deemed a waiver of E*TRADE Securities' rights under this Agreement.

**(h) Successors**
This Agreement will pass to the benefit of E*TRADE Securities and its successors, assigns and agents. In addition, I hereby agree that this Agreement and all the terms hereof, will be binding on my heirs, executors, administrators, personal representatives and any assigns permitted by E*TRADE Securities.

**(i) Power of Attorney**
I agree and hereby irrevocably appoint E*TRADE Securities, with full power as my true and lawful attorney-in-fact, to the full extent permitted by law, for the purpose of carrying out the provisions of this Agreement and taking any action and executing any instrument that E*TRADE Securities deems necessary or advisable to accomplish the purposes of this Agreement.

**(j) Power and Authority**
If I am a natural person, I represent that I have attained the age of majority and have the legal capacity to enter into this Agreement and perform my obligations under it. If I am a legal entity, including a corporation, partnership, estate or trust, I represent that I have all necessary power and authority to execute and perform this Agreement and that the execution and performance of this Agreement will not cause me to violate any provisions in my charter, by-laws, partnership agreement, trust agreement or other constituent agreement or instrument. I further represent that this Agreement, as amended from time to time, is my legal, valid and binding obligation, enforceable against me in accordance with its terms.

**(k) Headings**
The heading of each provision of this Agreement is for descriptive purposes only and will not be deemed to modify or qualify any of the rights or obligations set forth in each such provision.

**(l) Entire Understanding; Assignment**
This Agreement, all other written agreements and terms contained on statements and confirmations contain the entire understanding between E*TRADE Securities and me. This Agreement supersedes any previous agreements that I have made with E*TRADE Securities individually with regard to my Account, and if the Account is held jointly, it supersedes any previous agreements made by the same parties to this Agreement, to the extent that the subject matter is covered by this Agreement. E*TRADE Securities may assign its rights and duties under this Agreement to any of its successors, subsidiaries or affiliates without giving me notice, or to any other entity on prior written notice to me. I may not assign the rights and obligations under this Agreement without first obtaining the prior written consent of E*TRADE Securities. Any purported assignment in violation of this Agreement will be void.

**(m) Choice of Law**
I understand that this Agreement will be deemed to have been made in the State of New York and will be construed, and the rights and liabilities of the parties determined, in accordance with the internal laws of the State of New York.

**(n) Electronic Signatures**
My intentional action in electronically signing this Account Application is valid evidence of my consent to be legally bound by this Agreement and by other documentation submitted in the Account Application process or governing my relationship with E*TRADE Securities. The use of an electronic version of the Account Documents fully satisfies any requirement that they be provided to me in writing. I acknowledge that I may access and retain a record of the documents that I electronically sign through the E*TRADE Securities Web site. I am solely responsible for reviewing and understanding all of the terms and conditions of these documents. I accept as reasonable and proper notice, for the purpose of any and all laws, rules and regulations, notice by electronic means, including, the posting of modifications to this Agreement on the E*TRADE Securities Web site. I acknowledge and agree that E*TRADE Securities may modify the Agreement from time to time and I agree to consult the E*TRADE Securities Web site from time to time for the most up-to-date Agreement.

The electronically stored copy of this Agreement is considered to be the true, complete, valid, authentic and enforceable record of the Agreement, admissible in judicial or administrative proceedings to the same extent as if the documents and records were originally generated and maintained in printed form. I agree to not contest the admissibility or enforceability of E*TRADE Securities' electronically stored copy of the Agreement in any proceeding arising out of the terms and conditions of the Agreement. If more than one individual has electronically signed this Agreement, our obligations under this Agreement will be joint and several and identical to the obligations of joint account holders that have signed a paper Agreement.

Back to top

**13. ELECTRONIC DELIVERY OF DOCUMENTS**

**(a) Electronic Delivery of Documents**
**Consent to Electronic Delivery.** E*TRADE Securities is an electronic-based broker-dealer providing self-directed brokerage services. By agreeing to electronic delivery I am giving my informed consent to electronic delivery of all Account Communications (defined below), other than those I have specifically requested be delivered in paper form. "Account Communications" mean all current and future Account statements, trade confirmations, notices, disclosures, regulatory communications (including prospectuses, proxy solicitations and privacy notices) and other information, documents, data and records regarding my E*TRADE Securities Account and the Service (including amendments to this Agreement) delivered or provided to me by

E*TRADE Securities, the issuers of the Securities and/or Other Property in which I invest and other parties.

**Revocation of Consent.** I may revoke or restrict my consent to electronic delivery of Account Communications anytime, subject to the terms of this Agreement, by notifying E*TRADE Securities in writing or by phone of my intention to do so. I also have the right to request paper delivery of any Account Communication that the law requires E*TRADE Securities to provide to me in paper form. I understand that if I revoke or restrict my consent to electronic delivery of Account Communications or request paper delivery, E*TRADE Securities, at its discretion, may charge me a reasonable service fee for the delivery of Account Communications that would otherwise be delivered to me electronically, restrict my Account or close my Account and terminate access to the Service. Neither my revocation or restriction of consent, my request for paper delivery, nor E*TRADE Securities' delivery of paper copies of Account Communications will affect the legal effectiveness or validity of any electronic communication provided while my consent was in effect.

**Electronic Delivery System.** E*TRADE Securities will notify me by e-mail when Account Communications are posted on the E*TRADE Securities Web site if required by law. I will have access through the E*TRADE Securities Web site to an archive of all documents I received via electronic delivery for at least the current year. I may obtain copies of earlier documents on my request. All e-mail notifications of Account Communications will be sent to my e-mail address of record.

I acknowledge that the Internet is not a secure network and that communications transmitted over the Internet may be accessed by unauthorized or unintended third parties. E-mail notifications sent by E*TRADE Securities will not contain sensitive or confidential customer information, including account numbers and the identity of the security purchased. Due to security risks, I will not send any sensitive information, such as account numbers or Passwords, in an unencrypted e-mail. E-mails on rare occasions may fail to transmit properly. Regardless of whether I receive an e-mail notification, I agree to check the E*TRADE Securities Web site regularly for up-to-date information and to avoid missing time-sensitive information. I agree that, for my records, I can download and save or print the Account Communications I receive via electronic delivery. In the event that an e-mail notification sent to me is returned to E*TRADE Securities as undeliverable, a paper-form Mailgram will be sent to my postal mail address of record notifying me that Account Communications will be delivered by regular mail until E*TRADE Securities receives verification of e-mail address from me. I understand that if I am deemed to have revoked my consent to electronic delivery, E*TRADE Securities, at its discretion, may charge me a reasonable service fee for the delivery of Account Communications that would otherwise be delivered to me electronically, or restrict my Account.

I agree that the primary method of E*TRADE Securities' communication with me will be by posting information on servers accessible from the E*TRADE Securities Web site and, to the extent required by law, sending me a notice that directs me to the E*TRADE Securities Web site from which the information can be read and printed. I understand that E*TRADE Securities reserves the right, however, to post Account Communications on the E*TRADE Securities Web site without providing notice to me, send Account Communications to my postal or electronic address of record or to another Access Device I have registered with E*TRADE Securities. I agree to check the E*TRADE Securities Web site regularly as I may have no other means of knowing that information and Account Communications have been delivered to me. I agree that all Account Communications provided to me in any of the ways described above will be deemed to have been good and effective delivery to me when sent or posted by E*TRADE Securities, regardless of whether I actually or timely receive or access the Account Communication.

I agree to promptly and carefully review all Account Communications as and when delivered and notify E*TRADE Securities by telephone within, unless otherwise provided herein, five (5) days of delivery if I object to the information provided. E*TRADE Securities is entitled to treat such information as accurate and conclusive unless I object in writing within five (5) days of delivery.

**Duration of Consent.** This consent will be effective immediately and will remain in effect unless and until either I or E*TRADE Securities revoke it. I understand that it may take up to three (3) days to process a revocation of consent to electronic delivery, and I may receive electronic notifications in the interim.

**Costs.** Potential costs associated with electronic delivery of Account Communications include charges from Internet access providers and telephone companies, and such charges are borne by me. E*TRADE Securities does not charge me additional online access fees for receiving electronic delivery of Account Communications.

**Hardware or Software Requirements.** I understand that to receive electronic deliveries, I must have Internet access, a valid e-mail address, the ability to download such applications as E*TRADE Securities may specify and to which I have access and a printer or other device to download and print or save any information I may wish to retain. E*TRADE Securities will notify me of any changes in the hardware and software requirements needed to access electronic records covered by this consent.

**Consent and Representations.** I hereby agree that I have carefully read the above information regarding informed consent and fully understand the implications thereof. I hereby agree to the conditions outlined above concerning electronic delivery of Account Communications. I also agree that I will maintain a valid e-mail address and continue to have access to the Internet. If my e-mail address changes, I agree to notify E*TRADE Securities of my new e-mail address immediately in writing (for example, by submitting a completed change of e-mail address electronically through the E*TRADE Securities Website).

Back to top

**14. User Agreement**

By accessing other Web sites through links provided at the E*TRADE FINANCIAL Web Site, I agree to the following terms and conditions. The material available on these sites has been produced by independent providers unaffiliated with us. Any opinions or recommendations expressed are solely those of the independent providers and are not the opinions or recommendations of E*TRADE FINANCIAL Corp. or its subsidiaries. E*TRADE Securities does not provide any legal, tax, or accounting advice or advice regarding the suitability or profitability of a security or investment.

The information obtained by the independent providers (the "Information") is believed to be reliable. However, the timeliness, sequence, accuracy, adequacy, or completeness of such information is not guaranteed. Neither E*TRADE FINANCIAL Corporation nor its subsidiaries GIVE ANY EXPRESS OR IMPLIED WARRANTIES (INCLUDING BUT NOT LIMITED TO WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR USE) WITH RESPECT TO THE information, or the use thereof.

Neither E*TRADE Securities nor any independent provider/transmitter of information shall be liable in any way, and I agree to indemnify and hold harmless E*TRADE FINANCIAL Corporation, its subsidiaries, and the independent providers/transmitters for (1) any inaccuracy, error, delay in, or

000028

omission of (a) any information, or (b) the transmission or delivery of information; (2) any loss or damage arising from or occasioned by (a) any such inaccuracy, error, delay, or omission. (b) nonperformance, (c) interruption of information due either to any negligent act or omission by E*TRADE FINANCIAL Corporation, its subsidiaries, or the independent providers/transmitters of information or to any "force majeure" (i.e. flood, extraordinary weather conditions, earthquake, or other act of God, fire, war, insurrection, riot, labor dispute, accident, action of government, communications, power failure, or equipment or software malfunction) or any other cause beyond the reasonable control of E*TRADE FINANCIAL Corporation, its subsidiaries or the information providers/transmitters.

**Dow Jones Notice**

The Dow Jones Averages and The Dow Jones Global Indexes are compiled, calculated, and distributed by Dow Jones & Company, Inc. and have been licensed for use. All content of The Dow Jones Averages and The Dow Jones Global Indexes are copyrighted works of Dow Jones & Company, Inc., all rights reserved.

Dow Jones & Company, Inc. shall have no liability for any losses arising from inaccuracies in the indexes.

**S&P Notice**

Certain information found on this site is provided by Standard & Poor's, a division of The McGraw-Hill Companies, Inc. ("S&P"), and is a copyrighted work of The McGraw-Hill Companies, Inc. Reproduction of any S&P information in any form is prohibited without S&P's prior written permission. Because of the possibility of human or mechanical error by S&P's sources, S&P, or others, S&P does not guarantee the accuracy, adequacy, completeness, or availability of any information and is not responsible for any errors or omissions or for the results obtained from the use of such information. THERE ARE NO EXPRESS OR IMPLIED WARRANTIES, INCLUDING, BUT NOT LIMITED TO, WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR USE. In no event shall S&P be liable for any indirect, special, or consequential damages in connection with subscribers' or others' use of S&P information found on this site.

 Back to Top          Close Window 

000029

**EXHIBIT B**

**NASD**

**CODE OF ARBITRATION PROCEDURE**

**FOR**

**CUSTOMER DISPUTES**

As of December 27, 2007

13

## PART II  GENERAL ARBITRATION RULES

### 12200.  Arbitration Under an Arbitration Agreement or the Rules of NASD

Parties must arbitrate a dispute under the Code if:

- Arbitration under the Code is either:

    (1) Required by a written agreement, or

    (2) Requested by the customer;

- The dispute is between a customer and a member or associated person of a member; and

- The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

### 12201.  Elective Arbitration

Parties may arbitrate a dispute under the Code if:

- The parties agree in writing to submit the dispute to arbitration under the Code after the dispute arises; and

- The dispute is between a customer and a member, associated person of a member, or other related party; and

- The dispute arises in connection with the business activities of a member or an associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

### 12202.  Claims Against Inactive Members

A claim by or against a member in one of the following categories is ineligible for arbitration under the Code unless the customer agrees in writing to arbitrate after the claim arises:

- A member whose membership is terminated, suspended, cancelled or revoked;

- A member that has been expelled from NASD; or

- A member that is otherwise defunct.

14

### 12203.  Denial of NASD Forum

(a) The Director may decline to permit the use of the NASD arbitration forum if the Director determines that, given the purposes of NASD and the intent of the Code, the subject matter of the dispute is inappropriate, or that accepting the matter would pose a risk to the health or safety of arbitrators, staff, or parties or their representatives.  Only the Director or the President of NASD Dispute Resolution may exercise the Director's authority under this rule.

(b) Disputes that arise out of transactions in a readily identifiable market may be referred to the arbitration forum for that market, if the claimant agrees.

### 12204.  Class Action Claims

(a) Class action claims may not be arbitrated under the Code.

(b) Any claim that is based upon the same facts and law, and involves the same defendants as in a court-certified class action or a putative class action, or that is ordered by a court for class-wide arbitration at a forum not sponsored by a self-regulatory organization, shall not be arbitrated under the Code, unless the party bringing the claim files with NASD one of the following:

(1) a copy of a notice filed with the court in which the class action is pending that the party will not participate in the class action or in any recovery that may result from the class action, or has withdrawn from the class according to any conditions set by the court; or

(2) a notice that the party will not participate in the class action or in any recovery that may result from the class action.

(c) The Director will refer to a panel any dispute as to whether a claim is part of a class action, unless a party asks the court hearing the class action to resolve the dispute within 10 days of receiving notice that the Director has decided to refer the dispute to a panel.

(d) A member or associated person may not enforce any arbitration agreement against a member of a certified or putative class action with respect to any claim that is the subject of the certified or putative class action until:

- The class certification is denied;

- The class is decertified;

- The member of the certified or putative class is excluded from the class by the court; or

- The member of the certified or putative class elects not to participate in the class or withdraws from the class according to conditions set by the court, if any.

000033

15

This paragraph does not otherwise affect the enforceability of any rights under the Code or any other agreement.

**12205.  Shareholder Derivative Actions**

Shareholder derivative actions may not be arbitrated under the Code.

**12206.  Time Limits**

**(a) Time Limitation on Submission of Claims**

No claim shall be eligible for submission to arbitration under the Code where six years have elapsed from the occurrence or event giving rise to the claim.  The panel will resolve any questions regarding the eligibility of a claim under this rule.

**(b) Dismissal under Rule**

Dismissal of a claim under this rule does not prohibit a party from pursuing the claim in court. By filing a motion to dismiss a claim under this rule, the moving party agrees that if the panel dismisses a claim under this rule, the non-moving party may withdraw any remaining related claims without prejudice and may pursue all of the claims in court.

**(c) Effect of Rule on Time Limits for Filing Claim in Court**

The rule does not extend applicable statutes of limitations; nor shall the six-year time limit on the submission of claims apply to any claim that is directed to arbitration by a court of competent jurisdiction upon request of a member or associated person. However, where permitted by applicable law, when a claimant files a statement of claim in arbitration, any time limits for the filing of the claim in court will be tolled while NASD retains jurisdiction of the claim.

**(d) Effect of Filing a Claim in Court on Time Limits for Filing in Arbitration**

If a party submits a claim to a court of competent jurisdiction, the six-year time limitation will not run while the court retains jurisdiction of the claim matter.

16

**12207.   Extension of Deadlines**

(a) The parties may agree in writing to extend or modify any deadline for:

- Serving an answer;

- Returning arbitrator or chairperson lists;

- Responding to motions; or

- Exchanging documents or witness lists.

If the parties agree to extend or modify a deadline under this rule, they must notify the Director of the new deadline in writing.

(b) The panel may extend or modify any deadline listed in paragraph (a), or any other deadline set by the panel, either on its own initiative or upon motion of a party.

(c) The Director may extend or modify any deadline or time period set by the Code for good cause. The Director may also extend or modify any deadline or time period set by the panel in extraordinary circumstances.

**12208.   Representation of Parties**

**(a)        Representation by a Party**

Parties may represent themselves in an arbitration held in a United States hearing location. A member of a partnership may represent the partnership; and a bona fide officer of a corporation, trust, or association may represent the corporation, trust, or association.

**(b)        Representation by an Attorney**

At any stage of an arbitration proceeding held in a United States hearing location, all parties shall have the right to be represented by [counsel during any stage of an arbitration] an attorney at law in good standing and admitted to practice before the Supreme Court of the United States or the highest court of any state of the United States, the District of Columbia, or any commonwealth, territory, or possession of the United States, unless state law prohibits such representation.

**(c)        Representation by Others**

Parties may be represented in an arbitration by a person who is not an attorney, unless:

- state law prohibits such representation, or
- the person is currently suspended or barred from the securities industry in any capacity, or
- the person is currently suspended from the practice of law or disbarred.

17

**(d) Qualifications of Representative**

Issues regarding the qualifications of a person to represent a party in arbitration are governed by applicable law and may be determined by an appropriate court or other regulatory agency. In the absence of a court order, the arbitration proceeding shall not be stayed or otherwise delayed pending resolution of such issues.

**12209. Legal Proceedings**

During an arbitration, no party may bring any suit, legal action, or proceeding against any other party that concerns or that would resolve any of the matters raised in the arbitration.

**12210. Ex Parte Communications**

(a) Except as provided in Rule 12211, no party, or anyone acting on behalf of a party, may communicate with any arbitrator outside of a scheduled hearing or conference regarding an arbitration unless all parties or their representatives are present.

(b) No party, or anyone acting on behalf of a party, may send or give any written motion, request, submission or other materials directly to any arbitrator, unless the arbitrators and the parties agree, or the Code provides otherwise.

**12211. Direct Communication Between Parties and Arbitrators**

(a) This rule provides procedures under which parties and arbitrators may communicate directly.

(b) Only parties that are represented by counsel may use direct communication under this rule. If, during the proceeding, a party chooses to appear *pro se* (without counsel), this rule shall no longer apply.

(c) All arbitrators and all parties must agree to the use of direct communication during the Initial Prehearing Conference or a later conference or hearing before it can be used.

(d) Parties may send the arbitrators only items that are listed in an order.

(e) Parties may send items by regular mail, overnight courier, facsimile, or email. All the arbitrators and parties must have facsimile or email capability before such a delivery method may be used.

(f) Copies of all materials sent to arbitrators must also be sent at the same time and in the same manner to all parties and the Director. Materials that exceed 15 pages, however, shall be sent to the Director only by regular mail or overnight courier.

18

(g) The Director must receive copies of any orders and decisions made as a result of direct communications among the parties and the arbitrators.

(h) Parties may not communicate orally with any of the arbitrators outside the presence of all parties.

(i) Any party or arbitrator may terminate the direct communication order at any time, after giving written notice to the other arbitrators and the parties.

### 12212.   Sanctions

(a) The panel may sanction a party for failure to comply with any provision in the Code, or any order of the panel or single arbitrator authorized to act on behalf of the panel.

Unless prohibited by applicable law, sanctions may include, but are not limited to:

- Assessing monetary penalties payable to one or more parties;

- Precluding a party from presenting evidence;

- Making an adverse inference against a party;

- Assessing postponement and/or forum fees; and

- Assessing attorneys' fees, costs and expenses.

(b) The panel may initiate a disciplinary referral at the conclusion of an arbitration.

(c) The panel may dismiss a claim, defense or arbitration with prejudice as a sanction for material and intentional failure to comply with an order of the panel if prior warnings or sanctions have proven ineffective.

### 12213.   Hearing Locations

### (a) U.S. Hearing Location

(1) The Director will decide which of NASD's hearing locations will be the hearing location for the arbitration.  Generally, the Director will select the hearing location closest to the customer's residence at the time of the events giving rise to the dispute.

(2) Before arbitrator lists are sent to the parties under Rule 12403, the parties may agree in writing to a hearing location other than the one selected by the Director.

(3) The Director may change the hearing location upon motion of a party, as set forth in Rule 12503.

(4) After the panel is appointed, the panel may decide a motion relating to changing the hearing location.

**(b) Foreign Hearing Location**

(1) If the Director and all parties agree, parties may have their hearing in a foreign hearing location and conducted by foreign arbitrators, provided that the foreign arbitrators have:

(A) met NASD background qualifications for arbitrators;

(B) received training on NASD arbitration rules and procedures; and

(C) satisfied at least the same training and testing requirements as those arbitrators who serve in U. S. locations of NASD.

(2) The parties shall pay an additional surcharge for each day of hearings held in a foreign hearing location. The amount of the surcharge will be determined by the Director and must be agreed to by the parties before the foreign hearing location may be used. This surcharge shall be specified in the agreement to use a foreign hearing location and shall be apportioned equally among the parties, unless they agree otherwise. The foreign arbitrators shall have the authority to apportion this surcharge as provided in Rule 12902(c).

**12214.  Payment of Arbitrators**

(a) Except as provided in paragraph (b) and in Rule 12800, NASD will pay the panel an honorarium, as follows:

- $200 to each arbitrator for each hearing session in which he or she participates;

- an additional $75 per day to the chairperson for each hearing on the merits;

- $50 for travel to a hearing session that is postponed pursuant to Rule 12601; and

- $100 for each arbitrator if a hearing session other than a prehearing conference is postponed within three business days before a scheduled hearing session pursuant to Rules 12601(a)(2) and (b)(2).

(b) The Director may authorize a higher or additional honorarium for the use of a foreign hearing location.

(c) Payment for Deciding Discovery-Related Motions Without a Hearing Session

(1) NASD will pay each arbitrator an honorarium of $200 to decide a discovery-related motion without a hearing session. This paragraph does not apply to cases administered under Rule 12800.

20

(2) For purposes of paragraph (c)(1), a discovery-related motion and any replies or other correspondence relating to the motion shall be considered to be a single motion.

(3) The panel will allocate the cost of the honoraria under paragraph (c)(1) to the parties pursuant to Rule 12902(c).

(d)   Payment for Deciding Contested Subpoena Requests Without a Hearing Session

(1) The honorarium for deciding one or more contested motions requesting the issuance of a subpoena without a hearing session shall be $200.  The honorarium shall be paid on a per case basis to each arbitrator who decides the contested motion(s). The parties shall not be assessed more than $600 in fees under this paragraph in any arbitration proceeding.  The honorarium shall not be paid for cases administered under Rule 12800.

(2) For purposes of paragraph (d)(1), a contested motion requesting the issuance of a subpoena shall include a motion requesting the issuance of a subpoena, the draft subpoena, a written objection from the party opposing the issuance of the subpoena, and any other documents supporting a party's position.

(3) The panel will allocate the cost of the honorarium under paragraph (d)(1) to the parties pursuant to Rule 12902(c).

**EXHIBIT C**

1 of 1 DOCUMENT

Copyright 2007 McGraw-Hill, Inc.
Standard & Poor's Register of Directors and Executives

August 15, 2007

# Louis  Klobuchar  Jr.

**POSITION:** Chief Brokerage Officer
**COMPANY:** E*TRADE FINANCIAL Corp.
**ADDRESS:** 4500 Bohannon Dr., Menlo Park, CA, 94025, United States
**TELEPHONE:** 800-786-2575
**FAX:** 650-331-6835
**MSA:** CA San Francisco
**AFFILIATIONS:**
E*TRADE Securities LLC, Pres & Chief Brokerage Officer

**COLLEGE:** DePaul Univ.,

**LOAD-DATE:** August 15, 2007

**EXHIBIT D**

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

# FORM 10-K

*(Mark One)*

☒ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934 FOR THE FISCAL YEAR ENDED DECEMBER 31, 2006.**

**or**

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934 FOR THE TRANSITION PERIOD FROM _____ TO _____.**

### Commission File Number 1-11921

# E*TRADE Financial Corporation
#### (Exact Name of Registrant as Specified in its Charter)

| | |
|---|---|
| **Delaware** | **94-2844166** |
| (State or Other Jurisdiction of Incorporation or Organization) | (I.R.S. Employer Identification Number) |

**135 East 57th Street, New York, New York 10022**
(Address of Principal Executive Offices and Zip Code)

**(646) 521-4300**
(Registrant's Telephone Number, including Area Code)

**Securities Registered Pursuant to Section 12(b) of the Act:**
(Title of each class and Name of exchange on which registered)
Common Stock—$0.01 par value—NASDAQ
Mandatory Convertible Notes
**Securities Registered Pursuant to Section 12(g) of the Act:**
None

Indicate by check mark if the registrant is a well-known seasonal issuer, as defined in Rule 405 of the Securities Act. Yes ☒  No ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Securities Act. Yes ☐  No ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☒  No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer. See definition of "accelerated filer and large accelerated filer" in Rule 12b-2 of the Exchange Act.

Large accelerated filer ☒          Accelerated filer ☐          Non-accelerated filer ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act). Yes ☐  No ☒

At June 30, 2006, the aggregate market value of voting stock, comprised of the registrant's common stock and shares exchangeable into common stock, held by nonaffiliates of the registrant was approximately $7.8 billion (based upon the closing price for shares of the registrant's common stock as reported by the New York Stock Exchange on that date). Shares of common stock held by each officer, director and holder of 5% or more of the outstanding common stock have been excluded in that such persons may be deemed to be affiliates. This determination of affiliate status is not necessarily a conclusive determination for other purposes.

Number of shares outstanding of the registrant's common stock as of February 23, 2007: 427,164,672

### DOCUMENTS INCORPORATED BY REFERENCE

Definitive Proxy Statement relating to the Company's Annual Meeting of Shareholders to be held May 23, 2007, to be filed hereafter (incorporated into Part III hereof).

**E*TRADE FINANCIAL CORPORATION AND SUBSIDIARIES**

**CONSOLIDATED STATEMENT OF INCOME**
**(In thousands, except per share amounts)**

| | Year Ended December 31, | | |
|---|---|---|---|
| | **2006** | **2005** | **2004** |
| Revenue: | | | |
| Operating interest income | $ 2,774,679 | $1,650,264 | $1,145,597 |
| Operating interest expense | (1,374,647) | (779,164) | (510,455) |
| Net operating interest income | 1,400,032 | 871,100 | 635,142 |
| Provision for loan losses | (44,970) | (54,016) | (38,121) |
| Net operating interest income after provision for loan losses | 1,355,062 | 817,084 | 597,021 |
| Commission | 625,205 | 458,834 | 431,638 |
| Service charges and fees | 137,441 | 135,314 | 97,575 |
| Principal transactions | 110,235 | 99,336 | 126,893 |
| Gain on sales of loans and securities, net | 55,986 | 98,858 | 140,718 |
| Other revenue | 136,332 | 94,419 | 89,077 |
| Total non-interest income | 1,065,259 | 886,761 | 885,901 |
| Total net revenue | 2,420,321 | 1,703,845 | 1,482,922 |
| Expense excluding interest: | | | |
| Compensation and benefits | 469,202 | 380,803 | 350,440 |
| Clearing and servicing | 253,040 | 189,736 | 162,354 |
| Advertising and market development | 119,782 | 105,935 | 62,155 |
| Communications | 110,546 | 82,485 | 69,674 |
| Professional services | 96,947 | 77,416 | 69,014 |
| Depreciation and amortization | 73,845 | 74,981 | 77,892 |
| Occupancy and equipment | 85,568 | 69,089 | 69,572 |
| Amortization of other intangibles | 46,220 | 43,765 | 19,443 |
| Facility restructuring and other exit activities | 28,537 | (30,017) | 15,688 |
| Other | 136,042 | 59,860 | 90,891 |
| Total expense excluding interest | 1,419,529 | 1,054,053 | 987,123 |
| Income before other income (expense), income taxes, minority interest, discontinued operations and cumulative effect of accounting change | 1,000,792 | 649,792 | 495,799 |
| Other income (expense): | | | |
| Corporate interest income | 8,433 | 11,043 | 6,692 |
| Corporate interest expense | (152,496) | (73,956) | (47,525) |
| Gain on sales and impairment of investments | 70,796 | 83,144 | 128,111 |
| Loss on early extinguishment of debt | (1,179) | — | (22,972) |
| Equity in income of investments and venture funds | 2,451 | 6,103 | 4,382 |
| Total other income (expense) | (71,995) | 26,334 | 68,688 |
| Income before income taxes, minority interest, discontinued operations and cumulative effect of accounting change | 928,797 | 676,126 | 564,487 |
| Income tax expense | 301,983 | 229,823 | 181,764 |
| Minority interest in subsidiaries | — | 65 | 893 |
| Net income from continuing operations | 626,814 | 446,238 | 381,830 |
| Discontinued operations, net of tax: | | | |
| Loss from discontinued operations | (721) | (21,495) | (32,755) |
| Gain on disposal of discontinued operations | 2,766 | 4,023 | 31,408 |
| Gain (loss) from discontinued operations, net of tax | 2,045 | (17,472) | (1,347) |
| Cumulative effect of accounting change, net of tax | — | 1,646 | |
| Net income | $ 628,859 | $ 430,412 | $ 380,483 |
| Basic earnings per share from continuing operations | $ 1.49 | $ 1.20 | $ 1.04 |
| Basic earnings (loss) per share from discontinued operations | 0.00 | (0.04) | (0.00) |
| Basic earnings per share from cumulative effect of accounting change | — | 0.00 | — |
| Basic net earnings per share | $ 1.49 | $ 1.16 | $ 1.04 |
| Diluted earnings per share from continuing operations | $ 1.44 | $ 1.16 | $ 0.99 |
| Diluted earnings (loss) per share from discontinued operations | 0.00 | (0.04) | (0.00) |
| Diluted earnings per share from cumulative effect of accounting change | — | 0.00 | — |
| Diluted net earnings per share | $ 1.44 | $ 1.12 | $ 0.99 |
| Shares used in computation of per share data: | | | |
| Basic | 421,127 | 371,468 | 366,586 |
| Diluted | 436,357 | 384,630 | 405,389 |

See accompanying notes to consolidated financial statements

74

**CERTIFICATION OF SERVICE**

I, Alfredo Torrijos, hereby certify that on January 4, 2008, I caused the foregoing document titled **DECLARATION OF RICHARD L. KELLNER IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE** to be electronically filed and served upon the persons named below via the ECF system.

This document is available for review and downloading from the EFC system.

**<u>Attorneys for Defendant E\*Trade Securities LLC</u>**

Charles Michael Schaible
COOLEY GODWARD KRONISH LLP
101 California Street
5th Floor
San Francisco, CA 94111-5800
(415) 693-2000

David A. Vogel
Douglas Paul Lobel
COOLEY GODWARD KRONISH, LLP
One Freedom Square
Reston Town Center
11951 Freedom Drive,
Reston, VA 20190-5656
(703) 456-8000

Dated: January 4, 2008          By:_____/ s/_____
                                          ALFREDO TORRIJOS
                                          KABATECK BROWN KELLNER LLP
                                          *Counsel for Plaintiff and the proposed class*