RICHARD L. KELLNER, SBN 171416
(rlk@kbklawyers.com)
ALFREDO TORRIJOS, SBN 222458
(at@kbklawyers.com)
KABATECK BROWN KELLNER LLP
644 South Figueroa Street
Los Angeles, California 90017
Telephone: (213) 217-5000
Facsimile: (213) 217-5010

Attorneys for Plaintiff JOSH MANGINI

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| JOSH MANGINI, individually and on behalf of all others similarly situated, | CASE NO. C 07 5264 SI |
|---|---|
| Plaintiff, | **REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND ACTION TO STATE COURT** |
| vs. | Date:    January 25, 2008<br>Time:    9:00 a.m.<br>Division: 10, Floor 19<br>Judge:   Hon. Susan Ilston |
| E*TRADE SECURITIES L.L.C., a Delaware Limited Liability Company; and Does 1 through 250, inclusive, | |
| Defendants. | |

### I.     INTRODUCTION

Defendant E*Trade removed this action to the District Court based on naked averments that the amount in controversy requirement of the Class Action Fairness Action ("CAFA") was satisfied. Now, in response to Plaintiff's motion to remand–, E*Trade has proffered minimal facts (which it extrapolates based upon erroneous presumptions) to come to the conclusion that the class action *barely* satisfies the statutory $5 million threshold.

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND ACTION TO STATE COURT**

However, when E*Trade's figures are adjusted with the accurate facts and presumptions, its $5 million figure must be severely reduced – thus, placing this class action below the $5 million threshold under CAFA.

For example, E*Trade's $5 million figure is predicated upon its presumption that the Account Maintenance Fee ("AMF") was a constant $40 during the class period. This presumption is incorrectly made since, as E*Trade presumably knows, the $40 AMF was present only at the tail end of the class period prior to filing. If the $5 million threshold is adjusted to account for the fact that the AMF was approximately 62.5 percent of the number used by E*Trade to establish the $5 million threshold, that adjustment, alone, reduces the potential class damages to below the $5 million figure.

E*Trade is required to prove the amount in controversy by a preponderance of the evidence. This requires E*Trade to prove that it is "more likely than not" that Plaintiff's claims is likely to exceed $5 million. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403 (9th Cir. 1996). E*Trade has failed to meet this burden. Accordingly, this Court should grant Plaintiff's Motion to Remand.

## II. E*TRADE HAS MADE ERRANT PRESUMPTIONS THAT UNDERLIE ITS CALCULATION THAT CLASS DAMAGES EXCEED $5 MILLION

### A. Jurisdiction Is Determined From The Date Of Removal

At the outset, E*Trade is incorrect in stating that the period for which the amount in controversy is to be calculated is 26 quarters. E*Trade erroneously included 4Q07 in its calculation as the Notice of Removal was filed in 3Q07. It is well settled that "[d]iversity jurisdiction, including the amount in controversy, is determined at the instant of removal." *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter,* 199 F.Supp.2d 993, 1000 (C.D. Cal. 2002). This increases the number of potential class members E*trade must show in order to meet the amount in controversy requirement. It also negates the contention that that their estimate is "a conservative figure" since account holders improperly charged the AMF subsequent to removal are not to be considered. However, as detailed below, E*Trade is unable to prove the amount in controversy even with the inclusion of this latest quarter.

— 2 —
**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND ACTION TO STATE COURT**

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000
FAX (213) 217-5010

## B. The Account Maintenance Fee E*Trade Improperly Charged The Class Members Did Not Remain Constant For The Entire Period.[1]

E*Trade claims that the amount in controversy is met if the potential class has at least 250,000 putative members. E*Trade reaches this conclusion by dividing the $5 million requirement by the $20 average damage per class member. E*Trade's argument is fatally flawed by the fact that the AMF was not $40 throughout the entire period. E*Trade increased the AMF to $40 from $25 beginning in the first quarter of 2005. (Exhibit "A", p. 5) This results in an average damage amount of $12.50 for members of the Class who were improperly charged this fee prior to 2005.

The assumption that the AMF remained constant was the lynchpin on which E*Trade's argument relied. The introduction of a lower AMF during a portion of the period will result in a substantial reduction in E*Trade's damage calculation which, on its own, will bring the class damages below the $5 million jurisdictional threshold.

E*Trade assumes that the average number of Class members improperly charged the AMF each quarter from 2Q05 until 4Q07 is 10,391. (Opposition, 7:13) Assuming, *arguendo*, this average was maintained in 1Q05, the total number of Class members from 1Q05 to 4Q07 would be 124,692.[2] Multiplying this number by the average amount of damages ($20) results in approximately $2.5 million.[3] This leaves a deficit of roughly $2.5 million.

E*Trade erroneously calculates the damages of the remaining class members using an average damage of $20. However, the appropriate figure to use is $12.50 as the AMF was only $25 prior to 2005. With average damages of $12.50, E*Trade is required to prove that over 14,000 Class members were improperly charged the AMF from 3Q01 through 4Q04 in order to

---

[1] E*Trade erroneously included in its calculations the quarter that has passed since the notice of removal of this action. However, for the sake of consistency and ease of comprehension, this Reply Brief includes this quarter as well.
[2] 10 quarters X 10,391 Class members = 124,692
[3] 124,692 X $20 = $2,493,840

— 3 —
**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND ACTION TO STATE COURT**

1  make up the $2.5 million deficit.[4]  However, E*Trade can only muster 10,391 potential Class
2  members.  Being that 10,391 is clearly less than 14,000, it cannot be "more likely than not" that
3  that amount in controversy requirement is satisfied.

### C. The Remainder of E*Trade's Assumptions Are Not Supported By The Facts.

During the only quarter for which E*Trade provides any accurate data, 4Q07, 9,247 potential Class members were improperly charged the AMF.  This number represents 2.84% of the 372,674 accounts that were charged the AMF. (Opposition, 6:25)  E*Trade then, without any tangible support, applies this percentage to the number of accounts charged the AMF for the ten previous quarters to come up with an average of 10,391 potential Class members.  Assuming, *arguendo,* that this percentage is an accurate estimate of prior quarters, the accuracy of this extrapolation requires that the number of accounts reaching the 12-month mark remain relatively constant.  However, readily available information shows that this assumption is not necessarily supported by facts.

E*Trade's publicly available SEC filings show large variations in the number of brokerage accounts E*Trade adds every year.  For example, E*Trade increased the number of total accounts by 5% from 2001 to 2002, for a total of 3.7 million.  However, in 2003, the total number of accounts dropped 23% to 2.8 million. (Exhibits "B" and "C", pp. 9, 12).  E*Trade does not explain if this discrepancy resulted in a decrease in the number of new accounts, which would lead to a lower number of potential Class members for that year.

Furthermore, in 2005 E*Trade increased the number of brokerage accounts by 20%, to 3.6 million.  However, a large portion of this increase was the result of E*Trade's acquisition of two rival online brokerages with many established accounts. (Exhibit "A", p. 6).  E*Trade fails to explain how many, if any, of those new accounts were subject to the improper AMF.  By failing to explain how these variations may effect their extrapolations, E*Trade has failed to prove by a preponderance of the evidence that the amount in controversy is satisfied.

---

[4] 3Q01 through 4Q04 consists of 14 quarters.  In order to generate $2.5 million in improper fees, E*Trade would have had to charge an average of 14,285 Class members $12.50 in each of the 14 quarters.  14,285 X $12.50 X 14 = 2,499,875.

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000
FAX (213) 217-5010

— 4 —
**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND ACTION TO STATE COURT**

In its opposition, E*Trade's calculations place the damage model at slightly above the $5 million threshold. However, when these calculations are adjusted to reflect the true length of the class period, the actual dollar amount of the AMF, and the historic volume of new accounts, E*Trade cannot sustain its burden of demonstrating that this class action meets that jurisdictional threshold of $5 million.

### III. CONCLUSION

For all the foregoing reasons, Plaintiff requests that Plaintiff's motion to remand action to state court be granted.

Dated: January 11, 2008                    KABATECK BROWN KELLNER LLP


By:_____/s/_____
RICHARD L. KELLNER
Attorneys for Plaintiff JOSH MANGINI

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000
FAX (213) 217-5010

— 5 —
**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND ACTION TO STATE COURT**